**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Joseph P. NACCHIO, Defendant–**
**Appellant.**

**No. 07–1311.**

United States Court of Appeals,
Tenth Circuit.

Feb. 25, 2009.

Maureen E. Mahoney of Latham & Watkins LLP, (Alexandra A.E. Shapiro, J. Scott Ballenger, and Nathan H. Seltzer of Latham & Watkins LLP, Washington, DC; and Herbert J. Stern and Jeffrey Speiser of Stern & Kilcullen, Roseland, NJ, with her on the briefs), for Defendant–Appellant.

Edwin S. Kneedler, Deputy Solicitor General, Office of the Solicitor General, Department of Justice, (Troy A. Eid, United States Attorney, and James O. Hearty and Kevin T. Traskos, Assistant United States Attorneys, District of Colorado; and Leo J. Wise and Stephan E. Oestreicher Jr., Attorneys, Criminal Division, Department of Justice, Washington, DC, with him on the briefs), for Plaintiff–Appellee.

Andrew H. Schapiro, Mayer Brown LLP, New York, NY; and Barbara E. Bergman, National Association of Criminal Defense Lawyers, Albuquerque, NM, filed an amicus curiae brief for the National Association of Criminal Defense Lawyers.

Before HENRY, Chief Judge, TACHA, KELLY, BRISCOE, LUCERO, MURPHY, HARTZ, McCONNELL, and HOLMES, Circuit Judges.

## OPINION ON REHEARING EN BANC

HOLMES, Circuit Judge, joined by TACHA, BRISCOE, LUCERO, and HARTZ, Circuit Judges.

A jury convicted Joseph Nacchio, the former CEO of Qwest Communications International, Inc. ("Qwest"), of nineteen counts of insider trading. On appeal, Mr. Nacchio challenged his conviction, his sentence, and the forfeiture of his assets. Regarding his conviction, he argued that the evidence was insufficient to convict him, that the jury was improperly instructed, and that the trial judge incorrectly excluded both expert-testimony evidence and classified information important to his defense. A divided panel of this Court affirmed on the sufficiency of the evidence, jury instruction, and classified information issues but held that the expert testimony had been improperly excluded. The panel did not reach the challenges that Mr. Nacchio raised to the forfeiture of his assets or his sentencing enhancement. Thus, the case was reversed and remanded for a new trial. *See United States v. Nacchio ("Nacchio I")*, 519 F.3d 1140 (10th Cir.2008).

We granted rehearing en banc to consider the expert testimony issue.[1] In accordance with our local rule, the judgment was vacated, the mandate stayed, and the case was restored as a pending appeal. *See* 10th Cir. R. 35.6. On rehearing en banc, we hold that the expert testimony was properly excluded and affirm the district court's judgment. We now vacate the panel opinion insofar as it reversed the district court's judgment, including Parts II(A), IV, and V, as well as the separate concurring and dissenting opinion. The remainder of the panel's decision remains in effect.

## I. BACKGROUND

As the panel opinion provides a full recitation of the factual background, *see Nacchio I*, 519 F.3d at 1144–48, we discuss only the relevant events and rulings as needed to frame our analysis. The government had alleged that Mr. Nacchio, the former CEO of Qwest, made sales of shares of Qwest stock from January to May 2001 on the basis of material, nonpublic information. The jury trial commenced after more than a year of discovery and motions in limine, during which Mr. Nacchio disclosed no expert witness.

On March 16, 2007—three days prior to the start of trial—Mr. Nacchio first disclosed, pursuant to Fed.R.Crim.P. 16(b)(1)(C) ("Rule 16"), that he planned to call to the stand Professor Daniel Fischel as an expert. Under certain circumstances, Rule 16 requires a defendant to provide to the government, upon request, a written summary of any expert testimony that the defendant intends to use as evidence at trial under Federal Rules of Evidence ("FRE") 702, 703, or 705. "This summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed.R.Crim.P. 16(b)(1)(C).

---

1. On rehearing en banc we asked the parties to brief the following:

    [ (1) ] Was the defendant sufficiently on notice that he was required either to present evidence in support of the expert's methodology or request an evidentiary hearing in advance of presenting the expert's testimony? [ (2) ] Did the defendant have an adequate opportunity to present such evidence or request an evidentiary hearing in advance of presenting the expert's testimony? [ (3) ] Did the defendant bear the burden of requesting an evidentiary hearing? [ (4) ] Did the district court abuse its discretion in disallowing the evidence, and if so, is the appropriate remedy necessarily a new trial, or is a remand for purposes of conducting an evidentiary hearing adequate?

*United States v. Nacchio*, 535 F.3d 1165 (10th Cir.2008) (order granting petition for rehearing en banc).

It is undisputed that a Rule 16 disclosure was required in this case, because Mr. Nacchio previously had requested, pursuant to Fed.R.Crim.P. 16(a)(1)(G), a summary of any expert testimony the government intended to use during its casein-chief at trial. Aplee. Supp. En Banc App. 3. The provisions of Rule 16 are "intended to meet [the need for counsel to learn that an expert is expected to testify] by first, requiring notice of the expert's qualifications which in turn will permit the requesting party to determine whether in fact the witness is an expert within the definition of Federal Rule of Evidence 702." Fed. R.Crim.P. 16 advisory committee's note (1993). Next, "the requesting party is entitled to a summary of the expected testimony." *Id.* And finally, "and *perhaps most important,* the requesting party is to be provided with a summary of the bases of the expert's opinion." *Id.* (emphasis added).

Pursuant to Rule 16, Mr. Nacchio provided the government with a short summary of Professor Fischel's anticipated testimony as well as his curriculum vitae. Aplt.App. 460. The government objected that the disclosure did not satisfy the requirements of Rule 16 and requested a complete, proper disclosure. Aplee. Supp.App. 35. The government's objection additionally highlighted shortcomings of the disclosure under various rules of evidence, including FRE 702, and it included several references to the expert testimony requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

Aplee. Supp.App. 35, 38–42. The district court agreed that Mr. Nacchio's notice did not comply with Rule 16 because it "offer[ed] no bases or reasons whatsoever for Professor Fischel's opinions contained in the summary" and stated that "[t]he matter may be settled through analysis under Rule 16." Aplt.App. 349–52. The district court also noted, however, the government's additional assertion that the disclosure did not satisfy "[FRE] 401, 403, 602, 702, and 704." Aplt.App. 351. The district court instructed that "Defendant shall produce an expert disclosure *compliant with the federal rules described herein* by March 26, 2007." Aplt.App. 352 (emphasis added).

On March 22, 2007, while the jury was dismissed, the district court granted Mr. Nacchio three extra days to provide his revised Rule 16 disclosure. In doing so, the district court judge stated that he was "flabbergasted ... that [Mr. Nacchio] could think that was an adequate expert disclosure" and that "I think the rule is pretty clear, and ... it's pretty close to what is required in the civil area."[2] Aplt.App.2038, 2041. The following exchange then took place:

> [GOV'T ATTORNEY]: [I]t's my concern at least based on the way the disclosure is raised right now, there could be Daubert issues that arise with respect to certain parts of the testimony ....
>
> THE COURT: Probably not Daubert, but maybe Kumho Tire issues.
>
> [GOV'T ATTORNEY]: Yes, I misspoke.

---

**2.** Whether the district court viewed the operative criminal discovery standards as being roughly conterminous with civil discovery standards, and therefore erred in its *Rule 16 determination,* is not—as the principal dissent suggests—material to our resolution of this matter. *See* Dissenting Op. at 1259–61 (McConnell, J., dissenting) [hereinafter Dissenting Op.]. As discussed further herein, by

the time the district court issued its exclusion ruling, the front-and-center issue was the reliability of Professor Fischel's proffered expert testimony under *Daubert* and FRE 702, and it was upon that ground that the district court primarily acted to exclude Professor Fischel's testimony, concluding that Mr. Nacchio had failed to make an adequate showing that the testimony was reliable.

[DEFENSE COUNSEL]: In Latin, *forewarned is forearmed.*

THE COURT: That's not Latin.

[DEFENSE COUNSEL]: No, but I don't speak Latin.

THE COURT: All right.

Aplt.App.2041–42 (emphasis added).

Mr. Nacchio provided a revised Rule 16 disclosure on March 29 which summarized Professor Fischel's qualifications as an academic, his research and teaching in law and finance, and his previous experience both consulting and testifying. The disclosure outlined the bases for Professor Fischel's opinions and highlighted specific expected areas of testimony as well as the documents and data reviewed by Professor Fischel in connection with this matter. Aplt.App. 425–34. This revised Rule 16 disclosure explained that in reaching his conclusions, Professor Fischel had conducted a "study of the Questioned Sales in relation to various benchmarks and other relevant criteria." Aplt.App. 427. The revised disclosure also noted that Professor Fischel had analyzed Qwest's guidance, its actual stock performance, and reaction from the investment community; Qwest's guidance history compared to the guidance history of other telecommunications firms; and various facets of Qwest's revenue from indefeasible rights of use. Aplt.App. 430–32.

On Tuesday, April 3, the government filed a 63–page motion to exclude Professor Fischel's expert testimony. Aplt.App. 362. In this motion, the government thoroughly addressed the standards and case law of Rule 16 and FRE 401, 403, 602, 702, and 703, and discussed them in the context of Professor Fischel's qualifications and relative to each of his opinions as set forth in the revised Rule 16 disclosure. Aplt. App. 367–418. Included throughout were references to Professor Fischel's methodology and arguments regarding the role of *Daubert*[3] and FRE 702's reliability requirement in establishing the admissibility of expert testimony. *See, e.g.,* Aplt.App. 385, 388, 390, 405, 408. The government asserted that not only had Mr. Nacchio failed to comply with Rule 16, but that Mr. Nacchio had not established the admissibility of the evidence with respect to any of the proposed opinions due to, *inter alia,* failure to comply with FRE 702, and thus Professor Fischel's testimony should be excluded. The government further requested that, if the district court was inclined to allow any portion of the expert testimony "based on the disclosures to date," the court grant a hearing prior to the admission of the testimony "in order to [permit the government to] challenge its admissibility out of the presence of the jury." Aplt.App. 421 ("taking note of '*Daubert*'s requirement that *some* reliability determination must be made by the trial court *before* the jury is permitted to hear the evidence'" (quoting *Dodge v. Cotter Corp.,* 328 F.3d 1212, 1229 (10th Cir. 2003))). The government additionally requested that in advance of such a hearing, Professor Fischel should provide the reasons and bases of his opinions for the government's review. Aplt.App. 421–22.

Mr. Nacchio filed a seven-page response to the government's motion to exclude the following day. Aplt.App. 463. Mr. Nacchio's response asserted that: (1) the re-

---

**3.** Here, as in the parties' briefs and the panel opinion, we use *Daubert* as legal shorthand for the district court's obligation to test a proposed expert's methodology in advance of his or her testimony. *See Daubert,* 509 U.S. at 592–93, 113 S.Ct. 2786 (charging trial courts with the responsibility of acting as gatekeepers to ensure that expert testimony is both reliable and relevant); *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147–49, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (clarifying that the court's gatekeeper function applies to all expert testimony, not just testimony based in science).

vised disclosure complied with Rule 16; (2) Professor Fischel's opinions were proper under FRE 702 and 602; and (3) Professor Fischel was qualified to give the opinions set forth in the "expert report." While Mr. Nacchio did not specifically cite *Daubert* in the FRE 702 discussion—titled "Professor's Opinions Are Proper Under Rule 702"—or use the term "methodology," the response asserted that Professor Fischel would opine on "specialized knowledge as contemplated under Rule 702, which will assist the trier of fact" and that Professor Fischel has undertaken "extensive review" "to formulate opinions that go well beyond 'simple inference.'" Aplt.App. 466.

The next day, Thursday, April 5, trial resumed, and Mr. Nacchio called Professor Fischel to the stand. The district court dismissed the jury, saying, "I need to make some legal rulings at this time." Aplt.App. 3913. Neither party made any statement to the court at that time, and the district court proceeded to rule upon the government's motion to exclude. Observing that "the deficiencies under Daubert and Kumho Tire in these disclosures are so egregious that they hardly warrant the 63 pages of ink the Government has spilled in opposing the testimony," the court then explained why the testimony was "excludable on a number of rationales," including under FRE 702 and *Daubert* and *Kumho Tire*. Aplt.App. 3914–21. Specifically, the court noted its concern with the methodology, "which is absolutely undisclosed in this expert disclosure," and "[m]ost convincingly, the defendant has made no attempt to comply with Rule 702

or Daubert and establish that Fischel's testimony is the product of reliable principles and methods or that Fischel applied some principles and methods reliably in this case." Aplt.App. 3915, 3917. The court noted that Mr. Nacchio's "only representation on this issue" was one "woefully inadequate" sentence, and it quoted from the sentence noted above regarding the allegedly "extensive review" undertaken by Professor Fischel in formulating his opinions, which was included in Mr. Nacchio's response to the government's motion to exclude. Aplt.App. 3916. The court concluded that "[f]or all of those reasons, primarily the gross defect in failing to reveal the methodology," the government's motion was granted. Aplt.App. 3921.

After the ruling was announced, Mr. Nacchio's attorney asked if he could be heard, and the district court refused his request, saying, "I have your motion,[4] I have the Government's motion, I have your response. Any argument that you wish to make could have been put in the response." Aplt.App. 3921. Mr. Nacchio's attorney then requested and received permission to put Professor Fischel on the stand as a nonexpert witness. The court recessed over Friday and the weekend. Over the weekend, Mr. Nacchio filed a motion requesting, *inter alia*, permission for Professor Fischel to testify as an expert in rebuttal to the testimony of two financial analysts that the government presented as witnesses, or alternatively to strike the testimony of those two analysts.[5] Aplt.App. 474. Mr. Nacchio included a footnote requesting reconsideration of the

**4.** Presumably, the district court was referring to Mr. Nacchio's Rule 16 disclosure, as revised.

**5.** Mr. Nacchio filed this motion on Saturday, April 7. Mr. Nacchio then filed an amended, essentially identical motion on Sunday, April 8. Mr. Nacchio requested reconsideration and mentioned a *Daubert* hearing in both the original and the amended motion. The district court discussed but did not rule on Mr. Nacchio's motion the morning of April 9, before Professor Fischel took the stand to give nonexpert testimony. Aplt.App. 481 n. 4, 3969–75, 3980.

district court's prior exclusion of Professor Fischel's expert testimony and asserting that the district court did not have sufficient evidence nor did it develop a sufficient record to fulfill its *Daubert* gatekeeping function. In this footnote, Mr. Nacchio also suggested for the first time that, while a *Daubert* hearing is not specifically mandated, it would be "particularly appropriate where, as here, the court believes the expert['s] report was insufficiently detailed." Aplt.App. 481 n. 4.

On Sunday, April 8, the government filed a motion to exclude the rebuttal testimony, and Mr. Nacchio responded. On Monday, April 9, after Professor Fischel had provided some nonexpert testimony, the district court dismissed the jury and ruled from the bench. The district court denied Mr. Nacchio's motion to permit Professor Fischel's expert rebuttal testimony and to strike the government analysts' testimony, granted the government's motion to exclude Professor Fischel's rebuttal testimony in part, and then dismissed Professor Fischel. In denying Mr. Nacchio's motion, the district court stated that an expert was not necessary to rebut the analysts' opinions, that it "continue[d] to have the same difficulty with this methodology and non-disclosure of the methodology as it had with respect to the original expert report," and that "even if it were reliable, . . . the testimony is of no relevancy." [6] Aplt.App. 4075–76.

Following the sixteen-day trial, the jury deliberated for six days and convicted Mr. Nacchio on nineteen counts of insider trading covering trades that he had made in April and May 2001. Mr. Nacchio was acquitted of twenty-three counts covering earlier trades.

**6.** The principal dissent highlights this April 9 ruling as further validation for its theory that the district court's April 5 ruling to exclude Professor Fischel's expert testimony was erroneously predicated solely upon *Daubert* shortcomings in the Rule 16 disclosure. *See* Dissenting Op. at 1263–64, 1276–77. The district court's April 9 ruling "is equally susceptible of a correct reading," however. *Sprint/United Mgmt. Co. v. Mendelsohn,* —— U.S. ——, ——, 128 S.Ct. 1140, 1146, 170 L.Ed.2d 1 (2008). The court's statements are more naturally read as generally explaining that the same lack of reliability that doomed Mr. Nacchio's previous tendering of Professor Fischel as an expert witness continued to plague his proffer of Professor Fischel's testimony as an expert rebuttal witness. In other words, the district court was merely underscoring that neither prior to the latter proffer nor after it had the government or the court been "in possession of Fischel's opinion and/or methodology." Aplt.App. 4075. While the district court allowed that there were "other reasons" for its April 5 decision to exclude Professor Fischel's expert testimony, the court stressed that it was "precisely" that "lack of reliability"—as revealed through *all* of Mr. Nacchio's filings, not just through his March 29, 2007, disclosure—that prompted its exclusion ruling. Aplt.App. 4075.

Mr. Nacchio tacitly acknowledged the legitimacy of the comprehensive decision-making approach that the district court adopted when it considered *all* of Mr. Nacchio's filings with regard to the reliability issue, when Mr. Nacchio himself subsequently took the position that his revised Rule 16 disclosure was part of his submission on Professor Fischel's methodology. *See infra* notes 8, 13, 15. Contrary to the principal dissent's argument, Dissenting Op. at 1272–73, we are not suggesting that this acknowledgment by Mr. Nacchio provided the authorization for the district court to follow such a comprehensive gatekeeping approach in excluding Professor Fischel's expert testimony on April 5. The district court did *not* need Mr. Nacchio's "invitation," *id.* at 1273, or blessing to take this comprehensive approach. Rather, Mr. Nacchio's subsequent reliance on his revised Rule 16 disclosure as part of his *Daubert* methodology submission simply indicates that even Mr. Nacchio viewed it as legitimate for a district court to consider all "the particular facts and circumstances of the particular case," including Rule 16 disclosures, in assessing whether the requisite *Daubert* methodology showing had been made. *Kumho Tire Co.,* 526 U.S. at 158, 119 S.Ct. 1167.

## II. EXPERT TESTIMONY

### A. STANDARD OF REVIEW

The proponent of expert testimony bears the burden of showing that its proffered expert's testimony is admissible. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 n. 4 (10th Cir.2001). We review de novo "whether the district court employed the proper legal standard and performed its gatekeeper role" in determining whether to admit or exclude expert testimony. *United States v. Rodriguez–Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006). We review for abuse of discretion the manner in which the district court performs this gatekeeping role. *Dodge*, 328 F.3d at 1223 ("Though the district court has discretion in *how* it conducts the gatekeeper function, we have recognized that it has no discretion to avoid performing the gatekeeper function."). Provided the district court performs the role, this Court's review is deferential: we will not disturb the ruling "unless it is arbitrary, capricious, whimsical or manifestly unreasonable," or "we are convinced that the district court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Id.* (internal quotation marks omitted).

"Under Rule 702, the district court must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony." *Rodriguez–Felix*, 450 F.3d at 1122. In determining whether expert testimony is admissible, the district court generally must first determine whether the expert is qualified "by knowledge, skill, experience, training, or education" to render an opinion. *See* Fed.R.Evid. 702. Second, if the expert is sufficiently qualified, the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology, as set forth in *Daubert*. *Rodriguez–Felix*, 450 F.3d at 1123; *see, e.g., 103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir.2006).

Reliability questions may concern the expert's data, method, or his application of the method to the data. *See Mitchell v. Gencorp Inc.*, 165 F.3d 778, 782 (10th Cir. 1999); *see also* Fed.R.Evid. 702 (noting that the testimony must be "based upon sufficient facts or data" as well as "the product of reliable principles and methods" and the expert must have "applied the principles and methods reliably to the facts of the case"). The party offering the expert "must show that the method employed by the expert ... is scientifically sound and that the opinion is based on facts which satisfy Rule 702's reliability requirements." *Dodge*, 328 F.3d at 1222. "Under *Daubert*, any step that renders the expert's analysis unreliable ... renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." *Mitchell*, 165 F.3d at 782 (alteration in original) (internal quotation marks omitted). In making a reliability determination, "[g]enerally, the district court should focus on an expert's methodology rather than the conclusions it generates." *Dodge*, 328 F.3d at 1222.

### B. EXCLUSION OF EXPERT TESTIMONY

#### 1. THE DISTRICT COURT PERFORMED ITS GATEKEEPING ROLE

Although Mr. Nacchio argues that the district court abdicated its gatekeeping function, his argument really concerns the manner in which the district court fulfilled this role, e.g., allegedly failing to ensure the creation of a sufficiently developed record and declining to hold a hearing to reconsider Professor Fischel's admissibility. As discussed below, in its ruling the district court stated and applied the *Daubert* framework—the proper legal standard

in determining the admissibility of expert testimony—and it properly performed its role as "gatekeeper" in deciding whether to admit or exclude Professor Fischel's expert testimony. *Compare Rodriguez–Felix*, 450 F.3d at 1125–26 (examining for an abuse of discretion the exclusion of expert testimony on the basis of a report that was insufficient to allow assessment of the reasoning and methodology of the expert as a component of the district court's application of *Daubert), and United States v. Turner*, 285 F.3d 909, 912–13 (10th Cir. 2002) (reviewing the denial of a *Daubert* hearing for abuse of discretion), *with United States v. Call*, 129 F.3d 1402, 1405 (10th Cir.1997) (rejecting the defendant's argument that the district court had applied a per se rule of inadmissibility instead of properly applying *Daubert* when the court had expressly stated and demonstrated that it applied *Daubert)*.

Mr. Nacchio argues that the district court's ruling was premised upon Rule 16 and that, consequently, it was patently erroneous. We disagree. The district court's exclusion of Professor Fischel's testimony rested on *Daubert* grounds. True, the government first framed its challenge to Professor Fischel's expert testimony as an objection to the sufficiency of Mr. Nacchio's Rule 16 disclosure. But, by the time the district court ruled to exclude Professor Fischel's testimony, it was clear that the court's principal concern was *Daubert*. As is evident from its ruling, the district court excluded Professor Fischel's testimony because Mr. Nacchio had not met his burden of demonstrating admissibility as required by FRE 702. For example, after stating that Professor Fischel's testimony

could be excluded on a number of grounds, the district court stated: "Most convincingly, the defendant has made no attempt to comply with Rule 702 or Daubert and establish that Fischel's testimony is the product of reliable principles and methods or that Fischel applied some principles and methods reliably in this case." Aplt.App. 3915. Further, the district court stated that "Rule 702 governs this issue." *Id.* This indicates that lack of reliability under FRE 702 was the primary rationale for the court's decision.[7]

■ Although the district court ruling does include two ambiguous references to "disclosures," when read in context, these references do not indicate that the exclusion was based upon allegedly incorrect Rule 16 grounds or that the district court was referring solely to Mr. Nacchio's Rule 16 disclosures. "When a district court's language is ambiguous ... it is improper for the court of appeals to presume that the lower court reached an incorrect legal conclusion." *Sprint/United Mgmt. Co.*, 128 S.Ct. at 1146.

First, the district court's enigmatic reference to "these disclosures" occurred in its ruling after the court had outlined the contents of the government's motion to exclude and indicated that it also had read Mr. Nacchio's response to the government's motion. It was from Mr. Nacchio's response to the motion to exclude—rather than from Mr. Nacchio's revised Rule 16 disclosure—that the district court quoted the sentence that it characterized as Mr. Nacchio's "only representation" on the issue of methodology, which the court found to be "woefully inadequate" to support the

---

7. The district court's focus on FRE 702 also belies the principal dissent's suggestion that the district court excluded the expert testimony as a sanction for a Rule 16 discovery violation by Mr. Nacchio. *See* Dissenting Op. at 35–38. The cases cited by the principal dissent addressing the scope of a district court's discretion to impose such a sanction are inapposite, as the desire to levy an extreme sanction or penalty was not the impetus for the district court's evidentiary ruling in this case. Put most simply, the impetus for that ruling was Mr. Nacchio's failure to carry his evidentiary burden under *Daubert*.

admissibility of Professor Fischel's testimony. Aplt.App. 3914, 3916. Thus, notwithstanding the "these disclosures" reference, the court's ruling was grounded in *Daubert* and FRE 702 methodology concerns.[8]

Second, although the district court stated that Professor Fischel's methodology was undisclosed "in this expert disclosure," the discussion immediately preceding that comment did not refer to Mr. Nacchio's Rule 16 disclosure. Aplt.App. 3917. Rather, the district court had just quoted

from Mr. Nacchio's argument—made in his response to the motion to exclude— that Professor Fischel's opinions were proper under FRE 702. *Compare* Aplt. App. 3916 *with* Aplt.App. 466.

At most, then, the district court's ruling contains two ambiguous references to "disclosures" that arise in the context of the district court's assessment of Mr. Nacchio's *Daubert* arguments. Although the district court did cite other bases for its ruling, including its doubt that Professor Fischel's testimony was relevant,[9] the deci-

---

**8.** As part of these comments, the district court did note that it also had reviewed Mr. Nacchio's Rule 16 disclosure. However, since Mr. Nacchio (as discussed more specifically *supra* note 6 and *infra* in text and note 15) considered his revised Rule 16 disclosure to be a submission on Professor Fischel's methodology, the district court's consideration of his *disclosure is entirely consistent with the* idea that the court's principal focus, as well as the foundation for its ruling, was *Daubert* and FRE 702.

**9.** The principal dissent asserts that the district court must have been influenced by its allegedly erroneous conclusion that the excluded evidence was *irrelevant and unhelpful. See* Dissenting Op. at 1275–76. However, as the principal dissent acknowledges, review of this relevancy issue was not sought on en banc rehearing, and it is not directly at issue here as explained *infra* in note 21. *See id.* at 1275– 76; *see also supra* note 1. The panel's holding regarding the district court's relevancy finding—that is, regarding the district court's finding that Professor Fischel's economic evidence was *not* relevant—admittedly did not "disappear," Dissenting Op. at 1276, with the grant of the en banc petition. However, in proceedings of this en banc court, that holding has no decisional significance. It is an historical artifact. *See Brown v. Bryan County, OK,* 219 F.3d 450, 453 n. 1 (5th Cir.2000) ("With this vacatur, our previous opinion is no longer the law of the case." (citing *O'Connor v. Donaldson,* 422 U.S. 563, 577 n. 12, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975) ("Of necessity our decision vacating the judgment of the Court of Appeals deprives that court's opinion of precedential effect. . . ."))). Quite apart from the fact of vacatur, as a matter of logic,

the panel's holdings regarding admissibility of Professor Fischel's expert testimony should have no decisional force in this en banc proceeding. It is precisely the panel's work in finding error in the district court's exclusion of Professor Fischel's expert testimony that is open to question here. It logically follows that the panel's work on this point (including its holdings) cannot be permitted to guide the en banc court's assessment of the same general terrain. Even if the outcome here was once again a reversal, it would be the voice of *the en banc court speaking, not that of the* panel, and the outcome necessarily would be framed in terms of the en banc order and briefing. (Of course, the outcome is not a reversal, and we are expressly vacating *the* portion of the panel opinion, Part II(A), that addressed the district court's finding regarding the relevance of Professor Fischel's testimony.)

Furthermore, our decision to eschew any reliance on the panel's relevancy holding makes sense as a matter of jurisprudence. As further explained *infra* in note 21, this en banc court vacated the judgment of the panel and agreed to a rehearing on the question of the admissibility of Professor Fischel's expert testimony. That issue is multifaceted, and with great care the en banc court specified the areas for consideration. The en banc court could have included among those areas the district court's findings concerning the relevance of Professor Fischel's economic evidence, but it did not. Rather, the en banc order specified that its grant of rehearing was focused on the issue of Mr. Nacchio's presentation of "evidence in support of the expert's methodology," i.e., the reliability of the testimony. *See supra* note 1. *See generally* 16AA Charles Alan Wright et al., *Federal Practice*

sion to exclude Professor Fischel's expert testimony clearly was premised upon Mr. Nacchio's failure to establish that the testimony was reliable under *Daubert* and FRE 702—a determination that was focused on Professor Fischel's methodology.

We underscore, moreover, that to endorse the assertion that the district court made a ruling excluding the testimony on allegedly incorrect Rule 16 grounds alone would be particularly problematic in light of the instruction provided by the Supreme Court in *Sprint.* In light of the deference that is "the hallmark of abuse-of-discretion review," we "should not presume that a district court intended an incorrect legal result when the order is equally susceptible of a correct reading." *Sprint,* 128 S.Ct. at 1145, 1146 (internal quotation marks omitted). A fair, natural reading of the district court's decision indicates that the basis for the ruling was *Daubert.* And, the Supreme Court's guidance further demonstrates the impropriety of presuming that the district court based its ruling on purportedly erroneous Rule 16 grounds.

### 2. The District Court's Determination to Exclude the Expert Testimony

#### a. Notice

■ Mr. Nacchio was sufficiently on notice that he was required to present evidence in support of his expert's methodology or request an evidentiary hearing in advance of presenting the expert's testimony. It is well established that, as the proponent of Professor Fischel's expert testimony, Mr. Nacchio bore the burden of establishing its admissibility pursuant to FRE 702. *See Ralston,* 275 F.3d at 970 n. 4. This evidentiary burden put Mr. Nacchio on effective notice that, if Professor Fischel's testimony was going to be admitted, it would only be because Mr. Nacchio took appropriate action to get the job done. Mr. Nacchio argues, however, that there is no requirement that admissibility be shown at any specific time before presenting the witness and that he did not have notice of any obligation to proffer additional evidence or request a hearing.

In particular, Mr. Nacchio contends that the presumptive time for establishing the reliability of the expert's testimony is on the witness stand and that he had every right to assume that the court would conduct voir dire or permit the questioning of Professor Fischel before ruling on admissibility.[10] Though Mr. Nacchio's expectation

---

*and Procedure* § 3981.1, at 433 & n. 24 (4th ed. 2008) ("[T]he grant of en banc hearing may be limited in advance to an identified issue ...." (citing cases)). Consequently, the parties have not fully engaged with the en banc court on the relevancy issue in either their briefing or their oral arguments. It would therefore be an odd jurisprudential result indeed (if not a manifestly unfair one) for the en banc court to be guided in its resolution of this appeal by the bygone holdings of the panel, such as its relevancy holding, as to which the parties have not been heard in any meaningful way.

Accordingly, we have properly declined to incorporate such holdings into our analysis; they are not germane. We do not need to reach the relevancy question in our determination of the issue identified for en banc rehearing.

10. In its amicus brief, the National Association of Criminal Defense Lawyers ("NACDL") also asserts that the prevalent practice is to address *Daubert* issues at voir dire. We note this practice only to explain Mr. Nacchio's argument and to expressly recognize that this was *one* of the options that the district court had available to determine admissibility. We need not, and do not, offer any definitive opinion on whether this was the typical—or, using the more loaded language of Mr. Nacchio and the principal dissent, "presumptive," Dissenting Op. at 1261—practice in criminal cases for resolving *Daubert* admissibility issues. The principal dissent concedes that the district court was not bound to adhere to this practice, whether or not it was typical or presumptive. *Id.* at 1261, 1264. It follows that Mr. Nacchio had no entitlement to establish his witness's admissibility on the

that Professor Fischel's admissibility would be established after he took the stand may have been reasonable, *see, e.g., Goebel v. Denver & Rio Grande W. R.R.,* 215 F.3d 1083, 1087 (10th Cir.2000), Mr. Nacchio had no entitlement to a particular method of gatekeeping by the district court. Indeed, Mr. Nacchio's purported entitlement is squarely at odds with the directive in *Kumho Tire* that "[t]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." 526 U.S. at 152, 119 S.Ct. 1167. The district court's failure to·proceed as Mr. Nacchio anticipated does not by itself constitute an abuse of discretion.[11] *See id.* ("The trial

stand, despite the principal dissent's suggestion to the contrary. Therefore, any discussion by the principal dissent, *id.* at 1269–71, about whether Mr. Nacchio's conduct could be deemed to have forfeited such a right is beside the point.

The principal dissent's argument leaves the tracks, moreover, when it suggests that the district court had some obligation to provide specific notice to Mr. Nacchio concerning *"when* and *how* the *Daubert* issue was to be addressed." *Id.* at 18. The principal dissent offers no legal authority that even comes close to establishing its contention that trial courts are obliged to engage in such hand-holding, and we doubt that there is any. Indeed, in preparing to make his Fed.R.Crim.P. 29 motion for judgment of acquittal, Mr. Nacchio demonstrated his understanding of the true state of affairs: that is, it is *a party's* responsibility to seek to dispel any uncertainty concerning the court's practices and procedures. Specifically, Mr. Nacchio's lawyer said to the court, "I am unfamiliar with your practice. May I make an inquiry?" Aplt.App. 3602. Mr. Nacchio's aim was to determine "how extensive a presentation or argument" the court required as to Rule 29 motions, and the court answered the question. Aplt.App. 3602–03. As with his Rule 29 motion, if Mr. Nacchio was uncertain how the court wished to use its discretion to proceed regarding the admissibility of Professor Fischel's expert testimony and the resolution of the government's motion to exclude, or if he desired a specific method to be followed to assess admissibility, Mr. Nacchio was obliged to voice his query or request to the district court.

11. The only notice to which Mr. Nacchio was entitled was notice of the fact that the admissibility of his expert witness's testimony had been challenged by a government motion which asked the district court to exclude the testimony. He got that. Once he had responded to that motion and it was thus at issue, Mr. Nacchio had no right to be

schooled by the district court concerning the specific means it would use to decide the motion and the timing of its planned action. Moreover, the record suggests that Mr. Nacchio actually should have been on notice that the district court was contemplating ruling on the motion without a hearing. For example, on April 4, the day *before* Professor Fischel was offered as a witness, when the government asked about Professor Fischel, the court stated that it had "formed some preliminary views, but they really haven't jelled to the point" where it was ready to rule on the government's motion to exclude. Aplt.App. 3834. Then, on the morning of April 5, when Professor Fischel's appearance on the witness stand was *not* imminent, the district court raised the topic of the motion to exclude and said to the government, "I know that I have the motion on the expert testimony, but we're already a half hour overdue with the jury, and I know you want a ruling." Aplt.App. 3870. The court's comments reasonably can be read as indicating that the court contemplated ruling on the admissibility of Professor Fischel's expert testimony *before* he took the stand, believed that the parties expected it to do so, and was acknowledging that the court had been somewhat tardy in providing that ruling. Therefore, in fact, Mr. Nacchio arguably should have been on notice that the *Daubert* admissibility issue concerning Professor Fischel's testimony probably would *not* be resolved through his testimony on the stand, *unless* Mr. Nacchio, as the proponent of that testimony, took affirmative measures to secure the use of that procedure from the district court—something that Mr. Nacchio, of course, did not do. In any event, the principal dissent's argument that Mr. Nacchio was entitled to notice from the district court of the means it would use to resolve the government's at-issue motion to exclude and the timing of its planned action, and that Mr. Nacchio therefore could rightly claim unfair surprise when he did not get such notice, is legally untenable.

court must have the same kind of latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides *whether or not* that expert's relevant testimony is reliable.").

Mr. Nacchio was on notice that the admissibility of Professor Fischel's testimony under FRE 702 was at issue well before the district court issued its ruling.[12] As early as the government's motion regarding the first Rule 16 disclosure, the government argued that FRE 702 was implicated. Aplee. Supp.App. 39. Furthermore, the March 22nd in—court oral exchange that raised the possibility of *Daubert* issues arising—in which Mr. Nacchio's counsel noted that "forewarned is forearmed"—was, at the very least, de facto warning of the imminent need for Mr. Nacchio to meet his burden. *Cf. Macsenti v. Becker*, 237 F.3d 1223, 1231–32 (10th Cir.2001) (noting that even when a party does not timely raise a *Daubert* objection, "the trial judge is assigned the task of insuring that an expert's testimony rests on a reliable foundation and is relevant, but *Daubert* does not mandate

an inquiry questioning and challenging the scientific proffer absent a timely request by an objecting party").

Even if nothing previously had alerted Mr. Nacchio to the burgeoning *Daubert* issue, the government's motion to exclude Professor Fischel's expert testimony invoked *Daubert* and FRE 702 numerous times. The motion was based on deficiencies in the Rule 16 disclosure *and* on Mr. Nacchio's failure to carry his burden to demonstrate that Professor Fischel's testimony was admissible. The government's motion explicitly set forth authority and analysis regarding FRE 702's mandate that the expert testimony be "the product of reliable principles and methods," and it offered detailed reasons why those specific opinions did not meet this methodology requirement. Aplt.App. 374–78, 385, 388, 390, 396, 407–08, 415.

Furthermore, there can be no question, given the explicit language and tenor of Mr. Nacchio's response to this motion, that he understood that *Daubert* issues had arisen. Therefore, he also should have understood that, if the time had not earlier been ripe to bear the admissibility burden, that time had arrived.[13] Specifically, when Mr. Nacchio responded, in substance, he

12. Mr. Nacchio himself had cited *Daubert* repeatedly, and expressly requested "a hearing, mandated by *Daubert*, prior to trial" "to test the admissibility of" testimony from certain high-level Qwest executives who were expected to be government witnesses, whom Mr. Nacchio argued would offer expert testimony. Dist. Ct. Doc. 64, at 1, 2, 3–5, 8–9 (Def.'s Mot. to Compel, filed May 1, 2006); Dist. Ct. Doc. 103, at 2, 7, 8 (Def.'s Reply to Gov't's Resp. to Mot. to Compel, filed June 22, 2006); Aplt. App. 220. Mr. Nacchio again cited *Daubert* in (successfully) seeking to exclude the testimony of two of the government's computer experts. Aplee. Supp.App. 14. These repeated and salient references to *Daubert* by Mr. Nacchio severely undercut any argument that Mr. Nacchio would not recognize the *Daubert* challenge being raised in the government's motion to exclude.

13. In other words, at this point Mr. Nacchio's decision to steadfastly continue to view the

government's attack on Professor Fischel's expert testimony solely as it was initially framed—that is, only through the lens of Rule 16—became both unwise and perilous. Similarly, though the principal dissent emphasizes that a Rule 16 disclosure does not need to include the information sufficient to make a *Daubert* determination, *see* Dissenting Op. at 1263–64, that contention is premised upon the assumption that this Rule 16 analytical lens continued to be applicable up until the time the district court issued its exclusion ruling. As explained above in the text, however, despite Mr. Nacchio's desire to adhere to this standpoint—which he did to the exclusion of adequately turning his attention to the FRE 702 issue—Rule 16 did not principally govern the terms of the debate once he had received notice that Professor Fischel's methodology was controverted. The risk of not sufficiently rising to the government's FRE 702 challenge and of not setting forth all

addressed *Daubert* issues in discussing FRE 702 and Professor Fischel's qualifications. Although the precise word *Daubert* was not invoked, a section heading in his response was "Professor's Opinions Are Proper Under Rule 702." In that section, Mr. Nacchio discussed the "specialized knowledge" that Professor Fischel purportedly would bring to the jury and the analytic approach toward the financial data that he had undertaken to "formulate opinions," i.e., his methodology. Aplt.App. 466. Thus, as of April 4, when he filed his response, Mr. Nacchio was not only on notice that *Daubert* was in play, he had affirmatively responded to the *Daubert* issues.

Mr. Nacchio is attempting to recast an unremarkable district court evidentiary ruling as an invidious act of judicial hubris. But it will not work. At bottom, Mr. Nacchio's argument is no more than a run-of-the-mill lament of unfair surprise. We have rejected similar claims when, as here, the record belies them.

For example, in *Ralston*, we concluded that the record did not support plaintiff's claim that she was unfairly surprised by the district court's decision at a summary judgment hearing to exclude her expert's testimony under FRE 702. 275 F.3d at 970 n. 4. The district court found that the expert was unqualified to render an opinion in support of plaintiff's liability theory. *Id.* at 968. We noted that in the defendant's written response to plaintiff's summary judgment filing "an entire section is devoted to the argument that [plaintiff's expert] was not qualified to render an expert opinion." *Id.* at 970 n. 4. And we commented further: "As the purpose of the hearing was to discuss the issues raised in the parties' supplemental summary judgment papers, it is *disingenuous* for Plaintiff to now claim that she was unaware that [her expert's] qualifications would be at issue at the hearing." *Id.* (emphasis added). Therefore, we rejected plaintiff's claim of unfair surprise.

The reasoning of *Ralston* applies with even greater force on these facts. As in *Ralston*, before the district court acted to exclude it, the opponent of the expert testimony—the government—specifically challenged the admissibility of the expert testimony in its briefing and detailed the legal bases for its exclusion (e.g., methodology deficiencies under *Daubert*). In its motion to exclude Professor Fischel's testimony, the government referred to *Daubert* and FRE 702 numerous times in pointing out alleged deficiencies in Professor Fischel's testimony. By way of notice, however, Mr. Nacchio got more than the *Ralston* plaintiff. Among other things, he received the de facto warning of possible *Daubert* issues associated with Professor Fischel's testimony arising from the March 22nd oral exchange with the government and the district court. Accordingly, under *Ralston*'s logic, we find unpersuasive (if not disingenuous) Mr. Nacchio's argument that he did not have notice, before the district court ruled against him, that the admissibility of Professor Fischel's testimony under *Daubert* was at issue.[14]  *Cf.*

---

available arguments for the testimony's admissibility in fact materialized for Mr. Nacchio when the district court acted within its discretion to exclude the testimony under *Daubert*.

**14.** In an unpublished decision where the *Daubert* issue was in high relief, *Solorio v. United States*, we followed *Ralston*'s logic in rejecting a claim by plaintiffs of unfair surprise. 85 Fed.Appx. 705, 709–10 (10th Cir.2004). We recognize of course that *Solorio* is not binding precedent; however, given its factual similarity, we find its reasoning especially persuasive. There, plaintiffs contended that they did not receive adequate notice of the *Daubert* challenge to their expert and that the district court issued its ruling on an incomplete record. *Id.* It apparently was undisputed that the government defendant had not filed "a separate motion to exclude [the] evidence"

*Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 299 (2d Cir.1999) (finding no abuse of discretion when district court granted injunctive relief to defendant sua sponte without a formal hearing when plaintiff had both notice of the court's intention and the opportunity to address the issue through its briefs).

On the other hand, our decision in *Procter & Gamble Co. v. Haugen* illustrates well the rare set of circumstances—not found here—in which a proponent of expert testimony had so little notice of the district court's impending exclusion of its expert testimony that a claim of unfair surprise would have been justified. 427 F.3d 727, 736–37, 742 (10th Cir.2005). In that case, the district court dismissed with prejudice the plaintiffs' Lanham Act claims following a hearing on a motion for discovery sanctions against the plaintiffs. *Id.* at 736–37. The dismissal was partly based on the court's finding that the plaintiffs' expert testimony on damages was inadmis-

sible. *Id.* at 737. The admissibility ruling was only a paragraph, and the entire rationale was that the expert's damages testimony was not admissible under FRE 702 and *Daubert* because the testimony was based on an examination of too few products. The district court found that "[s]uch testimony clearly would not be based upon sufficient facts or data to be admissible in this Court" and without damages evidence the plaintiffs' claims must fail. *See id.*

Observing that the district court doubtless would have had to determine the admissibility of the expert testimony "at some point," we concluded that this basis did not justify dismissal of the case. *Id.* at 742. We noted that there were two major problems with the district court's ruling that the expert's testimony was inadmissible. First, the plaintiffs "had absolutely no warning prior to the district court's order of dismissal that the district court would be considering, let alone ruling on, the admissibility of [their expert's] testi-

and the exclusion was not preceded by "an explicitly-noticed *Daubert* hearing." *Id.* at 709. Nonetheless, we determined that plaintiffs' claim was untenable and that the district court did not abuse its discretion in excluding the expert's testimony following a summary judgment hearing in which the testimony's admissibility was litigated. *Id.* at 710. We noted that the government had expressly presented a *Daubert* attack in its reply brief for its motion for summary judgment. Furthermore, the government had suggested at the summary judgment hearing that a pretrial *Daubert* hearing be held, but plaintiffs did not second the proposal. *Id.* at 708–10. Under these circumstances, we concluded that "[i]n spite of receiving notice and an opportunity to be heard, [plaintiffs] failed to make an adequate showing on the *Daubert* gatekeeping issue," and, consequently, it was not an abuse of discretion for the district court to exclude their expert. *Id.* at 710. In other words, based upon the record, we determined that "plaintiffs' assertion of unfair surprise r[ang] hollow." *Id.* We should perforce adopt the same view here. Mr. Nacchio received as much notice as *Solorio*'s plaintiffs—and then

some. As with those plaintiffs, Mr. Nacchio was clearly alerted to the idea that the admissibility under *Daubert* of his expert's testimony was under attack when the opponent of the testimony (i.e., the government) advanced detailed written legal arguments under *Daubert* for its exclusion and raised the possibility of a *Daubert* hearing. But, like *Solorio*'s plaintiffs, Mr. Nacchio unwisely did not second the idea of a hearing, or otherwise meaningfully rise to the challenge, presented by the government's written arguments, of defending the admissibility of his expert's testimony. Furthermore, Mr. Nacchio actually got more notice than did the *Solorio* plaintiffs. Most notably, unlike them, Mr. Nacchio *did* receive from the government a separate motion to exclude his expert's testimony. In other words, there was no reasonable possibility that Mr. Nacchio could have been left in the dark concerning the government's intentions; the sole purpose of its motion was to exclude the testimony of his expert. Therefore, even more emphatically here than in *Solorio*, we are justified in concluding that Mr. Nacchio's claim of unfair surprise rings hollow.

mony." *Id.* Second, "[u]ndoubtedly due to the lack of prior notice, neither side ... provided the district court with detailed briefing regarding the admissibility of [the plaintiffs'] expert's testimony"; in turn, the district court record lacked specific findings as to why it concluded the testimony was inadmissible. *Id.* Thus, the circumstances strongly suggested that the district court had "'simply made an off-the-cuff decision to [exclude] the expert testimony.'" *Id.* (alteration in original) (quoting *Dodge,* 328 F.3d at 1223). Accordingly, we determined that the district court abused its discretion in excluding the expert's testimony.

*Procter & Gamble Co.* starkly reveals the weaknesses of Mr. Nacchio's claim of unfair surprise. There, admissibility of the plaintiffs' expert testimony had not been the subject of any filings or discussion, and the proponents "had not submitted any expert reports to the district court, the district court had not heard any expert testimony, and no motion to limit or exclude [the plaintiffs'] expert was before the court." *Id.* at 741. By contrast, the expert admissibility issue here had been put before Mr. Nacchio multiple times, and the district court's ruling offered specific support for its determination and referenced relevant filings by both Mr. Nacchio and the government. In short, Mr. Nacchio's claim of unfair surprise is woefully deficient and does not provide a basis for us to conclude that the district court abused its discretion in excluding Professor Fischel's testimony.

### b. Opportunity

Mr. Nacchio had an adequate opportunity to present evidence in support of Pro-

fessor Fischel's methodology or to request an evidentiary hearing in advance of presenting the expert's testimony. In addition to a continuous opportunity to file a written proffer of evidence, or to file a request for a hearing or a continuance, there were several specific instances, arising *after* the *Daubert* issue had come into focus, where Mr. Nacchio could have presented evidence or requested a hearing to meet his burden of admissibility:

- Initially, in his response to the government's April 3rd motion to exclude Professor Fischel's expert testimony—through which Mr. Nacchio certainly was apprised of the extant *Daubert* issue—Mr. Nacchio could have addressed the *Daubert* issue more thoroughly, offered substantially more methodology evidence, or requested a hearing or a continuance. Instead, Mr. Nacchio set forth only a few sentences regarding the propriety of Professor Fischel's opinions under FRE 702.[15] Aplt.App. 466.

- During the trial's lunch recess on Wednesday, April 4, the court spoke with the attorneys and noted that Mr. Nacchio had filed a response to the government's pending motion to exclude, but Mr. Nacchio did not make any requests regarding Professor Fischel. Aplt.App. 3721–23.

- At the close of the government's case on April 4, the court heard Mr. Nacchio's motion for acquittal and discussed various matters with the attorneys. When *the government* asked about Professor Fischel, the court stated that it had "formed some preliminary views" but was not yet ready

---

**15.** As discussed below, Mr. Nacchio also considered his revised Rule 16 disclosure to be a submission on Professor Fischel's methodology. Aplee. Supp. En Banc App. 50. Mr. Nacchio's assertion that he lacked notice and opportunity to establish reliability is undercut by his simultaneous assertion that he submitted methodology evidence (i.e., evidence concerning reliability) to the district court.

to rule. Beyond noting that Professor Fischel would be the third defense witness, Mr. Nacchio did not offer any more information to the court. Aplt. App. 3834–35.

- The morning of Thursday, April 5, the court discussed pending motions and ruled on five of them. When the court mentioned the motion to exclude Professor Fischel's expert testimony ("I know you want a ruling"), Mr. Nacchio said nothing, and was silent regarding the matter while the first two defense witnesses testified. Aplt.App. 3870.

- Although Mr. Nacchio argues that the ruling was issued before either party could say anything to the court, prior to calling Professor Fischel to the stand on April 5, Mr. Nacchio had the opportunity to, but did not, request time for argument, a hearing, or a continuance. When Professor Fischel was called, the court immediately announced that it needed to make some legal rulings and dismissed the jury. Aplt.App. 3913.

Mr. Nacchio asserts that the district court's refusal to allow him to orally argue Professor Fischel's admissibility was unfair on account of the court's earlier statement that "I'm not criticizing anybody for not submitting things in writing." Aplt. App. 3603. For two reasons, however, this argument is unavailing. First, the district court appears to have made this statement *not* as a general instruction to be applied wholesale throughout the trial, but in response to Mr. Nacchio's specific inquiry as to the court's preferred practice for entertaining a Fed.R.Crim.P. 29 motion for a judgment of acquittal. *See id.* ("Normally, *it's* done orally, and *it's* certainly appropriate in this case." (emphasis added)). Second, there is no evidence that the district court refused to hear Mr. Nacchio's admissibility argument *because* it was made orally; rather, the district court denied Mr. Nacchio yet another opportunity to set forth a basis for admission because this argument could have been presented—no matter the format—*before* the ruling was made, particularly in response to the government's motion to exclude. The district court's ruling was not a penalty or a punishment; [16] rather, the exclusion was the obligatory result of Mr. Nacchio's failure to meet his requisite burden under FRE 702 despite serial opportunities to do so.

While it would be an abuse of discretion for the district court to unreasonably limit the evidence upon which it based its *Daubert* decision, *see Dodge,* 328 F.3d at 1228, that did not happen here. There is no evidence that the district court had imposed filing restrictions or had otherwise prohibited Mr. Nacchio from offering evidence or making a request. *Cf. id.* at 1223–24, 1229 (concluding that in a case "where the expert testimony is crucial to the ultimate outcome, is vigorously challenged, and has several obvious areas of concern," it was unreasonable for the court to severely limit the filing of underlying

---

**16.** More specifically, the district court did not exclude Professor Fischel's expert testimony as a penalty for Mr. Nacchio's failure to request a *Daubert* hearing or to second the government's suggestion of such a hearing in his response to the government's motion to exclude. The district court's ruling resulted instead from Mr. Nacchio's failure to meet the evidentiary challenge put forth by the government by any of the legal means available to him. If Mr. Nacchio felt that he could not adequately respond to the motion to exclude with his written response, it was incumbent upon him to request whatever additional proceedings he thought necessary to achieve his evidentiary objective. After he failed to do so, the district court made its ruling on the basis of the record that *had* been developed, which was fully adequate for the court to examine the reliability issue as we discuss in Part II(B)(2)(d).

documentation, decline to accept proffers, and to otherwise circumscribe the information upon which it based its decision); *see also In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 854 & n. 30 (3d Cir.1990). Mr. Nacchio made no mention of a *Daubert* hearing to the district court until he inserted the footnote in his motion filed *after* the court issued its ruling excluding Professor Fischel's expert testimony. Even in this footnote, Mr. Nacchio fails to address the key concern that the district court previously had highlighted in excluding Professor Fischel's testimony—his methodology for this particular case.

Mr. Nacchio asserts that he lacked pre-ruling opportunity to present evidence or request a hearing because he had been under tremendous time pressure. Any purported lack of time to prepare a response must be considered in the context of months of trial and witness preparation that both parties had undertaken. Although Mr. Nacchio may have been on a tight deadline, a request for a continuance or a *Daubert* hearing, prior to calling Professor Fischel to the stand, would have been rather simple to undertake and certainly would not have required much time at all. The district court, having been alerted to the need for a ruling on admissibility and having given the parties an opportunity to present their arguments, was obligated to perform its gatekeeping function. *See Macsenti*, 237 F.3d at 1233–34; *Goebel*, 215 F.3d at 1088. Therefore, it should have come as no surprise to Mr. Nacchio that the district court ruled on admissibility; indeed, by waiting to rule until Professor Fischel actually was called, it had prolonged the opportunity for Mr. Nacchio to further address the *Daubert* challenge until such a ruling was compelled by Professor Fischel's imminent testimony. Instead, after "the district judge made clear his need for some proffer of data or literature underlying the expert's assumptions and conclusions, ... the defense offered practically nothing, despite repeated opportunities to do so." *United States v. Brien*, 59 F.3d 274, 277 (1st Cir. 1995).

### c. Burden

██ If Mr. Nacchio desired an evidentiary hearing, he bore the burden of requesting one. As explained below, Tenth Circuit case law does not mandate that a hearing be held, and neither the government nor the district court was under any obligation to call for a hearing or to prod Mr. Nacchio to supplement his filings. According to Mr. Nacchio, the only directive he had received from the district court was to comply with Rule 16, and he read the court's order for a revised Rule 16 disclosure at face value. Even assuming that this was a natural reading of the court's order, however, the proponent's burden of establishing admissibility of expert testimony arises from the offering of the expert for trial; it is not triggered by a court's directive. *See* Fed.R.Evid. 702 advisory committee's note (2000) ("[T]he admissibility of all expert testimony is governed by the principles of [Fed.R.Evid.] 104(a). Under that Rule, the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence.").

██ Relatedly, as discussed above, the government's motion to exclude clearly set forth the FRE 702 issue, regardless of whether the parties' previous communications had taken place in a Rule 16 context. In ordinary motion practice, a respondent must address any and all issues raised by a moving party's papers, or else face the very real possibility that it will be deemed to have abandoned its right to do so.[17]

---

17. We use the term "abandoned" here only to explain how Mr. Nacchio necessarily lost his opportunity to mount a response to the government's challenge to the admissibility of Professor Fischel's testimony on any grounds

**1252**

*See, e.g., Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146–47, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) (finding no abuse of discretion in district court's exclusion of expert testimony when the proponent's response was nonresponsive to the critique of the opponent, even though the district court did not hold oral argument); *In re Rezulin Prods. Liab. Litig.*, 224 F.R.D. 346, 352 (S.D.N.Y. 2004) ("It would be inappropriate to permit litigants to take it upon themselves to litigate issues in whatever piecemeal fashion they wish, trying out one argument and then, if unsuccessful, starting all over again with a new one.... Plaintiffs' obligation was to make their complete argument ... and then to abide the result."); *cf. Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 43–44 (1st Cir.1991) ("In this case, there is no sound reason to overlook the usual rules of pleading and practice and relieve the appellants from their seemingly deliberate choice to stand or fall upon their complaint as pleaded.... [W]e

that he failed to present *before the district court ruled.* The principal dissent repeatedly suggests that we have predicated our analysis on the view that Mr. Nacchio forfeited his right to present testimony to establish the admissibility of Professor Fischel's expert testimony by failing to request a hearing, most notably in Mr. Nacchio's response to the government's motion to exclude. *See* Dissenting Op. at 1261–62, 1269–71, 1277–78. Not true. Mr. Nacchio did not forfeit any rights, because he did not fail to assert any rights. *See United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) ("[F]orfeiture is the failure to make the timely assertion of a right...."). Likewise, Mr. Nacchio did not forfeit his defense of the admissibility of the expert testimony. *See Eberhart v. United States*, 546 U.S. 12, 19, 126 S.Ct. 403, 163 L.Ed.2d 14 (2005) (noting that when the government failed to raise a timely defense "it forfeited that defense"). Rather, Mr. Nacchio affirmatively engaged in the dispute and defended his witness's admissibility, e.g., responding to the government's motion, but he did so ineffectively and, more specifically, not well enough to satisfy the district court that the expert testimony was admissible. First, contrary to the principal dissent's assertion, *see* Dissenting Op. at 1271, Mr. Nacchio did not respond *fully* to the government's thorough motion, which had challenged the admissibility of the expert testimony in extensive detail. The district court reasonably could find that Mr. Nacchio's skeletal response—touching on Professor Fischel's methodology with one "woefully inadequate" sentence—was just not good enough, even when combined with the other information it had received about Professor Fischel's proposed testimony. Aplt.App. 3916. Second, Mr. Nacchio did not timely take affirmative steps to seek whatever additional procedures he deemed necessary to contradict the government's motion, such as requesting a chance to establish admissibility when Professor Fischel took the stand. Before the district court ruled, as discussed *supra* in text, Mr. Nacchio had numerous and continual opportunities to present arguments to enhance his chances of securing a favorable ruling on admissibility-not just in his written response to the government's motion to exclude, but also in oral arguments to the court, or in a full-blown *Daubert* hearing (had he requested one). Thus, it is not a question of omission or an overall failure to act, amounting to a forfeiture; there was, instead, a failed attempt by Mr. Nacchio to establish admissibility.

We simply recognize that the district court properly exercised its discretion under *Daubert* in finding that Mr. Nacchio had failed to carry his evidentiary burden and·that Professor Fischel's expert testimony was inadmissible. In other words, the government presented a *Daubert* challenge, and though Mr. Nacchio actively participated he did not respond effectively—he did not squarely and sufficiently oppose that challenge. The district court was legally obligated to decide whether admissibility had been established. *See, e.g., Dodge*, 328 F.3d at 1223 (noting that the district court "has no discretion to avoid performing the gatekeeper function"). And Mr. Nacchio simply lost the contest over admissibility, which is fully contemplated by our adversary system of justice. No question of forfeiture or waiver, as those concepts are customarily understood, *see United States v. Zubia–Torres*, 550 F.3d 1202, 1205–07 (10th Cir.2008) (McConnell, J.), has any bearing on our recognition of the propriety of the district court's discretionary decision to exclude Professor Fischel's expert testimony.

are not so foolhardy as to require district judges to act as mind readers [regarding plaintiffs' desire to amend their complaint]."). Courts are not disposed to allow litigants to have two or more bites at the proverbial apple. *See, e.g., EEOC v. Westinghouse Elec. Corp.*, 925 F.2d 619, 631 & n. 20 (3d Cir.1991) ("A remand should not be ordered when 'two bites of the apple' would be given to a litigant who, under circumstances such as those at bar, has neglected to produce evidence to support a desired finding and has, therefore, failed to carry its requisite burden as to a particular issue."); *cf. Weisgram v. Marley Co.*, 528 U.S. 440, 455, 120 S.Ct. 1011, 145 L.Ed.2d 958 (2000) ("It is implausible to suggest, post-*Daubert*, that parties will initially present less than their best expert evidence in the expectation of a second chance should their first try fail.").

■ Thus, having been placed on notice by the government's motion to exclude that the admissibility of Professor Fischel's testimony under FRE 702 was at issue, Mr. Nacchio—in addition to addressing any Rule 16 concerns—was obliged to marshal his FRE 702 arguments that would support admission of Professor Fischel's testimony. Our adversary system of justice simply does not afford a respondent, like Mr. Nacchio, the luxury of ignoring the ebb and flow of litigation and steadfastly adhering to the initial framing of the issues. *Cf. Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 897, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) ("[A] litigant's failure to buttress its position because of confidence in the strength of that position is always indulged in at the litigant's own risk.").

That conclusion, moreover, is not enervated by the criminal nature of the proceedings. Like civil parties, criminal defendants must follow the well-settled rules of litigation. *See, e.g., Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) ("Few rights are more fundamental than that of an accused to present witnesses in his own defense. In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." (citations omitted)); *United States v. Barajas–Chavez*, 358 F.3d 1263, 1266 (10th Cir.2004) ("A defendant must raise a motion to suppress evidence before trial or that objection is waived.").

Mr. Nacchio also asserts that he had no reason to request a hearing, because the government already had done so. However, Mr. Nacchio's response to the motion to exclude—which stated that the motion was "without merit" and should be denied, without itself requesting additional proceedings—plausibly could be read as both opposing the government's hearing request and inviting the court to rule on admissibility without further proceedings. Aplt.App. 463, 468. Furthermore, Mr. Nacchio was on notice that if he desired an evidentiary hearing to be held during these proceedings, he needed to request one. Specifically, the district court judge's published practice standards, of which Mr. Nacchio was aware, *see* Aplee. Supp. En Banc App. 63, provided that any party opposing a motion must state to the court whether that party believes an evidentiary hearing is necessary and estimate the length of such a hearing. Aplee. Supp. Br. Add. ¶ 17, at 8.

As conceded by Mr. Nacchio in his belated mention of a hearing to the district court, *see* Aplt.App. 481 n. 4, Tenth Circuit cases have interpreted *Kumho Tire*'s directive that courts must have leeway in applying the *Daubert* framework to mean that although *Daubert* hearings are the most common way to fulfil the gatekeeper function, " 'such a process is not specifical-

ly mandated.'" *See Turner*, 285 F.3d at 913 (quoting *Goebel*, 215 F.3d at 1087); *accord Dodge*, 328 F.3d at 1228; *United States v. Nichols*, 169 F.3d 1255, 1263 (10th Cir.1999); *Call*, 129 F.3d at 1405.[18] Therefore, if Mr. Nacchio was not satisfied with the district court's failure to address the government's request for a hearing, the burden of requesting one fell to him. *Cf. Greenlaw v. United States*, — U.S. —, —, 128 S.Ct. 2559, 2564, 171 L.Ed.2d 399 (2008) ("[O]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." (internal quotation marks omitted)).

Mr. Nacchio argues that he had no burden to request a hearing, in light of our case, *United States v. Roberts*,[19] as well as some Third Circuit decisions, which he cites for the proposition that district courts err when they exclude expert testimony without conducting a hearing, when the record is inadequate to allow for a proper reliability determination. Mr. Nacchio's argument is contrary, however, to the case law of this and other circuits. And his cited cases do not stand for the proposition that the burden was on the district court, rather than on him, to initiate an evidentiary hearing on the *Daubert* issue.

More specifically, as to *Roberts*, Mr. Nacchio contends that the case indicates that "the improper exclusion of Fischel requires reversal regardless of whether Nacchio provided sufficient information to establish admissibility before the court's *in limine* ruling." Aplt. Supp. Br. 29. In *Roberts*, a tribal official was indicted on sexual abuse charges based on the allegations of three women. 88 F.3d at 875. The government sought to introduce under FRE 404(b) evidence of the defendant's sexual abuse of nine other women not named in the indictment. *Id.* at 879. As part of its FRE 404(b) analysis, *see, e.g., United States v. Parker*, 553 F.3d 1309, 1313–14 (10th Cir.2009), the district court excluded the evidence under FRE 403 on the ground that its potential prejudice substantially outweighed its probative value. *Roberts*, 88 F.3d at 879. The government appealed, and this Court reversed and ordered a pretrial hearing. *Id.* at 881. We concluded that the district court failed to analyze the evidence in sufficient detail to determine whether it would demonstrate that the defendant engaged in a common scheme of sexual abuse—"the government's strongest rationale for introducing this evidence at trial." *Id.* at 880–81. We further determined that the government needed to submit additional information about the women's proposed testimony on remand, because the record was insufficient to determine whether the testimony would sustain the common scheme hypothesis. *Id.* at 881.

*Roberts* should not be interpreted, however, as having placed the burden on the district court here to order a hearing, for two principal reasons. First, in *Roberts*, we emphasized that our ruling rested upon "the unique and specific circumstances present" before us, and we did not purport

---

**18.** Other circuits are in accord with the Tenth Circuit view. *See, e.g., Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1113–14 (11th Cir.2005); *Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1064 (9th Cir.2002), *amended*, 319 F.3d 1073 (9th Cir.2003); *United States v. Evans*, 272 F.3d 1069, 1094 (8th Cir.2001); *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 248–49 (6th Cir.2001); *In re TMI Litig.*, 199 F.3d 158,

159 (3d Cir.2000), *amending* 193 F.3d 613 (3d Cir.1999).

**19.** 88 F.3d 872 (10th Cir.1996), *superseded by statute on other grounds*, Omnibus Consolidated Appropriations Act of 1997, Pub.L. No. 104–208, 110 Stat. 3009–25, *as recognized in United States v. Meacham*, 115 F.3d 1488, 1491 (10th Cir.1997).

to extend our holding beyond the Rule 404(b) context. *Id.* Indeed, we recognized that even in that context our holding would have limited application: "[T]his holding does not portend a requirement that district courts conduct similar hearings in all Fed.R.Evid. 404(b) cases involving the government's attempt to establish the defendant's common scheme or plan. The nature of the evidence relied upon by the prosecution will dictate how the issue must be resolved." *Id.*

Second, the *Roberts* holding primarily was based on the district court's failure to appropriately analyze the proposed testimony, not the insufficiency of the information submitted by the proponent (i.e., the government). The instruction that the government must submit more information was a secondary consideration to the remand that was required due to the district court's failure to direct enough attention to the evidence of the government's salient theory of relief (i.e., common scheme or plan). *See id.* at 880–81; *see also United States v. Roberts,* 185 F.3d 1125, 1142 (10th Cir.1999) ("We believe the district court followed our remand order and decided correctly ... the six women's testimony was admissible to show a common scheme.").

As for the Third Circuit case law, Mr. Nacchio relies heavily on *Padillas v. Stork–Gamco, Inc.,* 186 F.3d 412 (3d Cir. 1999). To the extent that *Padillas* should be looked to as persuasive authority, however, it does not mandate a hearing in every instance of *Daubert* gatekeeping. In *Padillas,* the Third Circuit reversed a grant of summary judgment premised upon the inadmissibility of an expert's report under *Daubert* and ordered an evidentiary hearing. In that case, the appellate court stated that "plaintiff could not have known in advance the direction the district court's opinion might take and thus needed an opportunity to be heard on the critical issues before having his case dismissed." *Id.* at 417–18.

The *Padillas* court emphasized that the district court had not offered plaintiff sufficient process to defend the admission of the expert testimony and that the district court's rejection of the testimony did not establish that there were not "good grounds" for the testimony, but, rather, that the opinions were insufficiently explained and their foundations inadequately explicated. *Id.* at 418. Thus, *Padillas* is readily distinguishable from this case, in that: (1) Mr. Nacchio knew the court would have to determine Professor Fischel's admissibility, given that the government's motion to exclude was ripe for decision and Mr. Nacchio actually called Professor Fischel to the stand; and (2) as explained above, Mr. Nacchio passed over numerous opportunities to defend admissibility and provide more information about methodology. In fact, *Padillas* is most closely analogous to our decision in *Procter & Gamble Co.,* 427 F.3d at 742, which, as discussed above, involved circumstances that sharply contrast with those here. *See supra* Part II(B)(2)(a). Moreover, the language of *Padillas* itself does not mandate a hearing under the instant circumstances:

> An in limine hearing will obviously not be required whenever a *Daubert* objection is raised to a proffer of expert evidence. Whether to hold one rests in the sound discretion of the district court. But when the ruling on admissibility turns on factual issues, as it does here, *at least in the summary judgment context,* failure to hold such a hearing *may be* an abuse of discretion. We hold that *in this case,* it was.

*Padillas,* 186 F.3d at 418 (emphasis added). As evident by the underscored text, *Padillas* narrowly tailored its holding to the summary judgment context and the factual circumstances of the case before it.

Thus, Mr. Nacchio's argument that *Padillas* required the district court during the course of this criminal trial to sua sponte order an evidentiary hearing fails.

Furthermore, more recent decisions from the Third Circuit have rejected the notion that a hearing is always required for *Daubert* gatekeeping. As the Third Circuit stated in *In re TMI Litigation:* "We did not intend to suggest [in *Padillas* ] that an *in limine* hearing is always required for *Daubert* gatekeeping." 199 F.3d at 159. Further, "*Padillas* certainly does not establish that a District Court must provide a plaintiff with an open-ended and never-ending opportunity to meet a *Daubert* challenge until plaintiff 'gets it right.'" *Id.; accord Oddi v. Ford Motor*

*Co.,* 234 F.3d 136, 151–55 (3d Cir.2000); *Nelson,* 243 F.3d at 249 n. 3.

Therefore, neither *Roberts* nor holdings from the Third Circuit lift the burden of requesting a hearing from Mr. Nacchio.

### d. No Abuse of Discretion

■ The district court fulfilled its duty as gatekeeper and did not abuse its discretion in excluding Professor Fischel's expert testimony.[20] There was a sufficiently developed record, a concrete reliability determination, and specific findings and discussion by the district court. *See Dodge,* 328 F.3d at 1223. In particular, the court did not abuse its discretion in finding that Mr. Nacchio did not carry his burden under *Daubert.*[21]

---

20. Mr. Nacchio and NACDL argue that because Professor Fischel's testimony was vital to Mr. Nacchio's defense, the exclusion also deprived Mr. Nacchio of the right to a present a complete defense. That right, however, is not absolute: it "may bow to accommodate other legitimate interests in the criminal trial process." *Young v. Workman,* 383 F.3d 1233, 1237 (10th Cir.2004) (internal quotation marks omitted). As there was no abuse of discretion in the exclusion, there was no impingement upon Mr. Nacchio's right to present his defense. *See Chambers,* 410 U.S. at 302, 93 S.Ct. 1038 (noting that the accused must comply with rules of procedure and evidence in exercising the right to present a defense). Furthermore, the principal dissent analytically misfires in purporting to identify an abuse of discretion in the district court's supposed exclusion of "important defense evidence on account of discovery violations, such as inadequate disclosure under Rule 16." Dissenting Op. at 1274. As discussed further above, *supra* notes 7, 16, the district court did not exclude Professor Fischel's expert testimony in order to penalize Mr. Nacchio. Moreover, the specific suggestion that the exclusion was some sort of Rule 16 sanction is simply misguided. Instead, Mr. Nacchio suffered the natural and unremarkable consequence of failing to carry his evidentiary burden with respect to the admission of Professor Fischel's expert testimony: the district court excluded it. Mr. Nacchio's status as a criminal defendant did not relieve him of this

evidentiary burden. Furthermore, although we generally find Judge Kelly's dissenting opinion to be unpersuasive, it is especially so insofar as it asserts that we have "cho[sen] expediency over due process." Kelly Dissenting Op. at 1278. Far from it. As painstakingly recounted herein, Mr. Nacchio had ample opportunity to make his case for the admission of Professor Fischel's expert testimony to support his defense. And, irrespective of "the tone of this trial," *id.,* Mr. Nacchio was obliged to attempt to make that case, consistent with the gatekeeping discretion vested in the district court by *Daubert.* Mr. Nacchio did not rise to this challenge.

21. Noting that whether the district court abused its discretion was one aspect of the issue as to which the court granted en banc rehearing, the principal dissent attempts to use that simple point as the predicate for asserting arguments about two allegedly undisputed legal errors by the district court concerning the contents of Rule 16 disclosures and the relevancy of economic evidence. According to the principal dissent, arguments related to these purported errors are appropriate in this en banc proceeding because they allegedly played an important part in the district court's evidentiary ruling and at least partly caused that ruling to constitute an abuse of discretion. *See* Dissenting Op. at 1275–77. The principal dissent's attempt to shoehorn these otherwise extraneous purport-

ed legal errors into this en banc proceeding is problematic for at least three reasons.

First, the initial premise of the principal dissent's argument is flawed: it is not undisputed that these two issues involve legal errors. As noted *supra* at note 2, whether the district court confused civil and criminal discovery standards and therefore erred in its Rule 16 determination is irrelevant here because it is patent that the district court primarily based its decision on *Daubert* and FRE 702 grounds. Therefore, acting with prudent judicial restraint, we simply have elected not to opine on the Rule 16 issue. Our act of restraint does not amount to a concession that the district court erred. As for the district court's relevancy ruling, as evident in the panel's split decision, it is far from undisputed that the district court erred. *See Nacchio I*, 519 F.3d at 1174 (Holmes, J., concurring in part and dissenting in part) ("Such reasons [as stated by the district court regarding relevance] for excluding expert testimony are perfectly reasonable.... It was certainly permissible for the district court to conclude that [Professor Fischel's expert testimony] was not relevant. The district court could have excluded Professor Fischel's testimony on grounds of relevance alone....").

Second, the abuse of discretion component of our en banc order naturally must be read with reference to the overarching focus of that order: that is, the district court's exclusion of Professor Fischel's testimony on *Daubert* and FRE 702 grounds. Indeed, the principal dissent's own arguments tacitly acknowledge this: "[T]he real issue in this case ... is ... whether it was an abuse of discretion to decide the *Daubert* issue on the basis of the disclosures alone, without hearing or testimony." Dissenting Op. at 1273. Our en banc order did not open the door for an inquiry into every purported legal error that the district court may have made in evaluating Professor Fischel's proffered expert testimony. *See supra* notes 1, 9. The relevancy of Professor Fischel's proffered expert economic evidence was a separate issue from the primary *Daubert* issue—i.e., the reliability of Professor Fischel's methodology in arriving at his economic opinions—and, in its findings, the district court treated the two issues as distinct. True, Mr. Nacchio failed to satisfy the district court that the testimony would be *either* relevant *or* reliable. Aplt. App. 3917 (noting that the court was "concerned *not only* with the methodology" but also that the requirement that the testimony be helpful to the jury was not met); *cf. id.* at 4075–76 ("[E]ven if [Professor Fischel's proposed expert rebuttal testimony was] reliable, the Court remains of the conclusion that the testimony is of no relevancy."). However, it was the latter reliability issue that was the primary basis of the district court's ruling excluding Professor Fischel's expert testimony. And it was *only* as to the latter separate issue that this Court granted en banc rehearing. Accordingly, the mere fact that our en banc order called for consideration of whether the district court abused its discretion does not provide free license, as the principal dissent would have it, for consideration of the separate issue of the district court's finding concerning the relevancy of Professor Fischel's expert testimony regarding economic evidence.

Third, and relatedly, even if the district court's purported legal errors concerning the Rule 16 and economic-evidence relevancy issues were properly within the zone of consideration in this en banc proceeding, it is not entirely clear why they would merit analytical attention. The principal dissent's assertion that "the relevance of [the district court's] legal errors to the evidentiary ruling is obvious" is *itself* far from obvious. Dissenting Op. at 1277. The principal dissent offers us little more than this bald *ipse dixit* as support for this proposition.

The principal dissent does seem to rely on the notion the district court's allegedly erroneous view of these legal issues necessarily would have been factored into the court's determination of how to respond to what the court misguidedly believed to be Mr. Nacchio's "procedural derelictions" or "procedural infraction." Dissenting Op. at 1276–78. As noted repeatedly herein, *see supra* notes 7, 16, 20 and accompanying text, however, the district court did not exclude Professor Fischel's expert testimony in order to penalize Mr. Nacchio for any procedural delict. The exclusion was simply the product of Mr. Nacchio's faire to carry his evidentiary burden concerning the admissibility of Professor Fischel's expert testimony.

Therefore, we are brought back to the fact that the district court treated the *Daubert* issue as a separate (and primary) component of its multifaceted critique of the admissibility of Professor Fischel's expert testimony. Consequently, even if the district court's purported Rule 16 and relevancy errors were proper subjects for consideration in this en banc proceeding, which is focused on reliability under *Daubert*, it is far from clear that we would devote more than minimal energy in inspect-

In addition to the sentence included in his response to the motion to exclude noting that Professor Fischel had undertaken "extensive review of SEC filings, press releases and other financial data," Aplt. App. 466, Mr. Nacchio considered his revised Rule 16 disclosure to be a submission on Professor Fischel's methodology. Aplee. Supp. En Banc App. 50. This filing indicated that Professor Fischel was basing his opinion on analysis of, *inter alia,* market—and stock-related information. These assertions indicate that Professor Fischel was applying his experience to material that he reviewed to formulate an opinion. An expert witness's testimony can rely solely on experience. When that is the case, however, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed.R.Evid. 702 advisory committee's note (2000). Mr. Nacchio did not offer any of this additional information. "The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *Id.* "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Joiner,* 522 U.S. at 146, 118 S.Ct. 512.

■ It appears that Mr. Nacchio relied on Professor Fischel's qualifications to tip the balance in favor of the admissibility of his expert testimony. In doing so, Mr. Nacchio ignored the precept that when assessing expert testimony, "the question before the trial court [i]s specific, not general." *Kumho Tire,* 526 U.S. at 156, 119 S.Ct. 1167. Although Professor Fischel generally has been permitted to testify in the past, and a district court might well respect his credentials, the court had an obligation to assess the methodology that Professor Fischel had employed in the case at hand. *See id.* at 153–56, 119 S.Ct. 1167; *Rodriguez–Felix,* 450 F.3d at 1122. Mr. Nacchio could not assume that his expert's testimony would be admitted because other courts had allowed it in; he had to carry his burden of demonstrating the admissibility of Professor Fischel's testimony in this particular case. Mr. Nacchio, however, failed to satisfy the district court that Professor Fischel's testimony was reliable. Thus, the district court was well within its discretion in excluding it. *See Rodriguez–Felix,* 450 F.3d at 1125 (finding no abuse of discretion when the district court excluded testimony based on the "woefully inadequate" report regarding proffered testimony).

In *Sprint,* the Supreme Court explained that on account of the district court's familiarity with the case and greater experience with evidentiary matters, this Court must "afford broad discretion" to the court's evidentiary rulings. *Sprint,* 128 S.Ct. at 1144–45. Here, the district court properly performed its *Daubert* gatekeeping role in excluding Professor Fischel's testimony as inadmissible for lack of reliability under FRE 702, and Mr. Nacchio did not carry his burden of establishing the admissibility of Professor Fischel's testimony. Perhaps more to the point, the district court's exclusion of the testimony was not arbitrary, capricious, whimsical, or manifestly unreasonable; nor are we convinced that the district court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.

ing these separate issues—certainly not the significant resources expended by the principal dissent—or that such attention would shed much light on the propriety of the district court's stand-alone exclusion ruling under *Daubert.*

## III. CONCLUSION

Based upon the foregoing, we **AFFIRM** Mr. Nacchio's conviction and **VACATE** the prior panel opinion insofar as it reversed the district court's judgment, including Parts II(A), IV, and V, as well as the separate concurring and dissenting opinion. The remainder of the panel's decision remains in effect. The government's motion to file a supplemental en banc appendix is **GRANTED.** This Court's grant of release pending appeal is revoked, the unsecured bond executed by Mr. Nacchio in the district court is exonerated, and the stay of Mr. Nacchio's sentence of imprisonment is hereby lifted. This case is remanded to the initial decisional panel for further proceedings relating to the unresolved sentence enhancement and asset forfeiture issues.

McCONNELL, Circuit Judge, dissenting, joined by HENRY, Chief Judge, and KELLY and MURPHY, Circuit Judges.

Joseph Nacchio was convicted by a jury and sentenced to six years in prison after the district judge refused to allow his expert witness, Professor Daniel Fischel, to testify at his trial for securities violations. The judge disqualified the witness without hearing argument from defense counsel or testimony from the witness regarding the reliability of his methodology. The judge based this ruling on what is now agreed was a mistaken interpretation of the rules of criminal procedure. The panel reversed that ruling, and in its petition for rehearing en banc the government did not even attempt to defend the district court's rationale. Instead, the government argues—and the en banc majority agrees—that the exclusion of this witness was the defendant's fault, for failing to establish the foundation for his testimony in advance of putting him on the stand or to file a motion for permission to establish the foundation through testimony.

The flaw in the government's argument is that the rules of criminal procedure, unlike the rules of civil procedure, do not require a criminal defendant to establish the foundation for expert testimony through advance written submissions. Unless the criminal defendant is otherwise directed by the district court—something which did not happen here—he may establish the foundation for witness testimony by putting the witness on the stand for voir dire examination. The defendant responded properly to every motion made by the government, and nothing in the conduct of the defense can reasonably be construed as abandoning or forfeiting his right to establish the reliability of the expert evidence through testimony. It was the district judge, not defense counsel, who misunderstood the procedural rules. We dissent on the ground that the defense did everything it was required to do—but that even if counsel somehow slipped up, it was an abuse of discretion for the court to shut down the primary line of defense in a criminal case on the basis of what was at worst an understandable and inconsequential mistake.

**I. Parties In Criminal Cases Are Under No Obligation To Submit Written Information Sufficient To Resolve *Daubert* Issues In Advance, Or To Make A Motion For Permission To Establish Admissibility By Witness Testimony**

At the heart of this case is the difference between discovery practice in criminal and civil cases, which "derives from the special constitutional constraints of criminal proceedings." *United States v. Mehta*, 236 F.Supp.2d 150, 155 (D.Mass.2002) (Gertner, J.). In civil cases, both sides are entitled in advance of trial to know and to respond to the evidence that will be presented by the other side, including any expert testimony. In criminal cases, the defendant is entitled to keep his cards

close to the vest; he may not be required to disclose his evidence or trial strategy until after the government has presented its case. These differences are reflected in the discovery rules.

Under Rule 26(a)(2) of the Federal Rules of Civil Procedure, any party who wishes to use a retained expert must give the opposing party in advance of trial a written expert report prepared and signed by the witness, containing a "complete statement" of the witness's opinions and the "basis and reasons for them"; all data, other information, and exhibits on which the testimony is based; and the witness's qualifications, publications, previous testimony, and compensation statement. Moreover, in a civil case the opposing side is entitled to take the expert's deposition under Rules 30 and 31 and, if the expert report and deposition testimony fail to establish the reliability of the methodology, can move for summary judgment under Rule 56. If issues regarding the reliability of the expert's methodology—which we, like the majority and the parties, will call "*Daubert* issues"—are not resolved on summary judgment, they must be resolved through questioning the witness, either in a separate *Daubert* hearing outside the presence of the jury or by foundational testimony and voir dire examination on the stand prior to presentation of the witness's opinion evidence. The timing of the hearing, and whether it should be held in the presence of the jury, depend on the circumstances of the case. As the advisory committee note to Federal Rule of Evidence 104 points out: "Not infrequently the same evidence which is relevant to the issue of establishment of fulfillment of a condition precedent to admissibility is also relevant to weight or credibility, and time is saved by taking foundation proof in the presence of the jury."

In criminal cases, by contrast, neither side has a general right to discover the other's evidence, though the defendant is entitled to request and obtain certain specific types of evidence from the prosecution. Apart from Rule 16, which we discuss below, a criminal defendant may call an expert witness to the stand without any advance disclosure whatsoever. There is no requirement of an expert report; there are no depositions of the expert; there are no motions for summary judgment to test whether there are triable issues regarding the witness's methodology. As in civil cases, the proponent of an expert in a criminal case has the burden of establishing that the witness's methodology is sound under the standards of *Daubert* and *Kumho Tire*. But absent any countervailing directive from the trial court, parties in criminal cases can, and typically do, meet this burden by eliciting foundational testimony from the witness on the stand, subject to cross-examination by the opposing party. A party in a criminal case does not have to make a motion to proceed in this fashion; it is the default procedure. As in civil cases, the questioning may be conducted in a separate hearing outside the presence of the jury, by motion of either party or of the court, or at the beginning of the witness's testimony. If the opposing party wishes to obtain a ruling on admissibility in advance of the witness's testimony, it may file a motion *in limine* or a motion to conduct the hearing outside the presence of the jury.

The majority does not dispute that this is the typical procedure for resolving *Daubert* issues in criminal cases. The majority quotes the defendant's contention that "the presumptive time for establishing the reliability of the expert's testimony is on the witness stand," and cites an amicus brief filed by the National Association of Criminal Defense Lawyers (NACDL) that states that "the prevalent practice is to address *Daubert* issues at voir dire." Maj. Op. 1244, 1244–45 n. 10. The majority says it

declines to "offer any definitive opinion" regarding how *Daubert* issues are ordinarily resolved, Maj. Op. 1244–45 n. 10, but it makes no attempt to dispute the defendant or the NACDL on this point. Indeed, the majority concedes that it "may have been reasonable" for Mr. Nacchio to assume "that Professor Fischel's admissibility would be established after he took the stand." *Id.* at 1245. The majority qualifies this concession only by noting, correctly, that the trial court has broad discretion to vary from the presumptive procedure and thus that a criminal defendant has "no entitlement to a particular method of gatekeeping by the district court." *Id.* at 1245.

The defendant's position on this point is consistent with the discussion of *Daubert* procedures found in standard authorities. *See, e.g.,* 29 Charles Allen Wright & Victor James Gold, Federal Practice and Procedure: Evidence § 6265 (1997) ("Normally a trial court will hear qualification evidence before permitting the witness to give opinion testimony. That hearing may take place either in the presence or absence of the jury, at the discretion of the court." (citations omitted)); *see also* Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence (Joseph M. McLaughlin, ed., 2d ed.2006) § 702.02[6][b] ("Evidentiary hearings, known as *Daubert* hearings, are the most common method trial courts use to fulfill their gatekeeper function.... When the hearing occurs during trial, the court has discretion to determine whether to hold it in the presence of the jury.... The reliability hearing may also be combined with voir dire to test the expert's qualifications."); *Goebel v. Denver & Rio Grande W. R.R.,* 215 F.3d 1083, 1087 (10th Cir.2000) ("The most common method for fulfilling this function is a *Daubert* hearing").

It is thus undisputed that the "presumptive" procedure for establishing admissibility of expert testimony is through voir dire examination of the witness on the stand, either in a separate *Daubert* hearing or at the beginning of the witness's testimony. But this proposition merits far more emphasis than the majority gives it. If the standard or presumptive procedure is to establish reliability through examination of the witness, it follows that the defendant is not required to make a motion asking for permission to follow that procedure. Motions are required to deviate from presumptive procedures, not to follow them. To be sure, the district court has authority to impose a different set of procedures— but Judge Nottingham did not do so in this case, or if he did, he made no mention of them prior to disqualifying the witness. And to be sure, a party can waive or forfeit his right to present a witness or to qualify him through voir dire examination—but nothing the defendant did at trial can reasonably be construed as a waiver or forfeiture. Mr. Nacchio's counsel did not expressly move to be allowed to establish Professor Fischel's admissibility on the witness stand, but given that this is the presumptive procedure, a motion to that effect was not necessary; therefore, his failure to make such a motion cannot be construed as a forfeiture. The majority has cited no case in which a criminal defendant has ever been held to forfeit his right to establish witness admissibility through voir dire examination by mere failure to file a motion asking for permission to do so; the government has cited no such case; and we have located no such case. This appears to be the first.

## II. The District Court Was Wrong To Disqualify The Witness On The Basis Of The Lack Of Information About Methodology In The Defendant's Rule 16 Disclosure

We address first the district court's rationale for excluding the expert witness

testimony. Although no one defends that rationale anymore, the district court's error colors the entire matter.

Rule 16 of the Federal Rules of Criminal Procedure creates an exception to the usual rule that defendants need not provide notice of their intention to offer expert witnesses. Under Rule 16(b), if a defendant requests disclosure of certain evidence and the government complies, the defendant becomes obligated to make certain disclosures in return. Specifically, if the defendant requests and receives a written summary of any expert testimony the government intends to introduce, the defendant must provide similar notice of any expert testimony he intends to use. Fed.R.Crim.P. 16(b)(1)(C). These written summaries must include a description of the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications. *Id.* §§ 16(a)(1)(G), 16(b)(1)(C). The required "written summary," however, falls far short of the "complete statement" required of litigants in civil cases. *See United States v. Mehta,* 236 F.Supp.2d 150, 155–56 (D.Mass.2002). In particular, Rule 16 does not require experts in criminal cases to provide written reports explaining their opinions or to make a written proffer containing the information required under the civil rules. In this respect, the rules are the same for government and defendant. The amicus brief for the NACDL, for instance, states that they are "unaware of any instance in which the government has provided [their] members with a Rule 16 expert notice that laid out the full *Daubert* justification (or anything even approaching it) for the proposed testimony." NACDL Br. 4–5.

Because the defense requested and obtained disclosure of the government's experts in this case, Mr. Nacchio was obligat-ed to disclose his experts in return. This he did. On the date set by order of the court, defense counsel provided the requisite notice of his intent to call Professor Fischel, in full compliance with Rule 16.[1] The disclosure identified the witness, stated his credentials, and provided a brief summary of the opinions he would present and the sources on which those opinions were based. The disclosure did not contain the "complete statement" of the witness's econometric methodology that would be necessary under the civil rules. Professor Fischel did not prepare or provide an expert report, which, as noted, is not required under the criminal discovery rules.

During trial, the prosecutor took the position that Mr. Nacchio's written summary of "the bases and reasons" for Professor Fischel's opinions had to include sufficient description of his econometric methodology to enable the district court to discharge its *Daubert* gatekeeping function: "Defendant has not adequately complied with Rule 16's requirements for any of the 'opinions' he proposed to offer through Professor Fischel. He has not set forth the reasons and bases for his opinions...." App. 418. Indeed, the government filed a lengthy motion arguing that the expert testimony should be excluded because "*[t]he disclosure* also does not show that Professor Fischel used a reliable methodology in reaching his opinions." *Id.* at 363 (emphasis added). This argument took two forms. First, the government argued that the evidence should be excluded as a "sanction[ ]" for the defendant's supposed violation of Rule 16. *Id.* at 418. Second, the government argued that because the defendant had not established the reliability of the expert's testimony in his expert disclosure, the evidence should

---

**1.** The government objected to the form of the initial disclosure and the district court required the defense to supplement, which it did. We need not determine whether this order of the district court was correct.

be excluded for not having passed the *Daubert* test. *Id.* at 363 ("The *disclosure* also does not show that Professor Fischel used a reliable methodology in reaching his opinions. The *disclosure* is essentially a list of facts and conclusions—with nothing in between. There is no suggestion that Professor Fischel actually selected any reliable principles and applied them reliably to the facts, as he must.") (emphasis added). These arguments amount to the same thing, because both presuppose the defendant's obligation to make his *Daubert* showing in his written disclosure under Rule 16.

On April 5, defense counsel called Professor Fischel to the stand, but before he could even begin to establish the foundation for the witness's testimony, Judge Nottingham dismissed the jury and excluded the evidence in a ruling from the bench. Judge Nottingham accepted the government's Rule 16 argument, ruling that "the deficiencies under Daubert and Kumho Tire *in these disclosures* are so egregious that they hardly warrant the 63 pages of ink the Government has spilled in opposing the testimony." App. 3914 (emphasis added). *See id.* at 3917 ("The Court is concerned ... with the methodology, which is absolutely undisclosed *in this expert disclosure*."). The judge ruled the expert testimony inadmissible on the ground that the defendant's written submissions on the Rule 16 issue did not contain information sufficient to establish reliability under *Daubert.* This closely resembles the ruling a judge in a civil case might make on summary judgment, if the written submissions by the proponent of a witness failed to provide any evidence of reliability. Judge Nottingham also supplied other reasons for excluding the evidence, including that Professor Fischel's testimony was not "relevant" or helpful to the jury. The judge specifically stated, however, that he was disqualifying Professor Fischel "primarily" on account of defense counsel's

"gross defect in failing to reveal the methodology." App. 3921.

Judge Nottingham was evidently under the impression that the reliability of an expert's methodology in a criminal case must be evaluated on the basis of written reports or disclosures, as is typically done in civil cases, rather than on the basis of oral testimony, as is typically done in criminal cases. Indeed, he specifically stated that the witness disclosure requirement under the criminal rules is "pretty close to what is required in the civil area." App. 2041.

The majority purports to find the court's explanations for its ruling "ambiguous," Maj. Op. 1242, but they are not. Judge Nottingham's conclusion that the defendant had not established the reliability of Professor Fischel's methodology was unambiguously premised on the erroneous assumption that the defendant was required to disclose the methodology in his written proffer rather than to do so through testimony. *See* App. 3916 (basing his *Daubert* ruling on "[t]he defendant's only representation on this issue," which was a sentence in the defendant's response to the government's motion to exclude); *id.* at 3917 ("The Court is concerned ... with the methodology, which is absolutely undisclosed in this expert disclosure."); *id.* at 4075 (pointing to the lack of any "methodology or reliable application of methodology to the case" in "[t]he March 29, 2007, disclosure" as the primary reason for excluding the evidence). Not only is that what Judge Nottingham said, but it is obvious from context. Unless the judge thought the defendant had to disclose the witness's methodology in his written submissions, it would have been patently irrational for him to base his *Daubert* determination on those submissions. We do not doubt the majority's statement that "the court's ruling was grounded in *Daubert*

and Rule 702 methodology concerns," Maj. Op. 1243, but the point is that the court based its evaluation of those concerns solely on the written disclosures. Because the judge was wrong to believe that the disclosures had to explain the methodology, he was wrong to base his *Daubert* determination on those disclosures.

On appeal to this court, the defendant argued that this was a misreading of Rule 16(b), that his disclosure statement did not have to include an explanation of Professor Fischel's methodology, and thus that the absence of such disclosure of methodology was an improper basis for rendering a *Daubert* ruling. The government argued that Judge Nottingham was correct in his interpretation of Rule 16. This dispute over the meaning of Rule 16 was the principal issue before the panel on the expert witness question.

The panel reversed the district court's Rule 16 ruling, holding that Rule 16 does not compel the proponent of expert testimony to disclose information sufficient to demonstrate that the witness's methodology is reliable under *Daubert*. This portion of the holding was unanimous. See *United States v. Nacchio*, 519 F.3d 1140, 1173 (10th Cir.2008) (Holmes, J., dissenting) (agreeing with the panel majority that Rule 16 "certainly did not require [the defendant] to demonstrate admissibility"). As the panel held, Rule 16 leaves criminal defendants free to present expert witnesses without satisfying *Daubert* in advance through written expert reports. The government's argument, if accepted, would have foisted civil discovery burdens on criminal defendants. Accordingly, the panel held that Mr. Nacchio's Rule 16 disclosure "did exactly what the law required" and the district court erred in excluding the evidence on the basis of the supposed "egregious" "deficiencies" in the disclosure. *Nacchio*, 519 F.3d at 1151.

In its petition for rehearing, the government abandoned its Rule 16 argument, and all parties now seem to agree that Mr. Nacchio's disclosure was sufficient under Rule 16. If Rule 16 disclosures need not include information sufficient for the court to exercise its *Daubert* gatekeeping function, the district court necessarily abused its discretion in basing its *Daubert* determination on those disclosures. It would be like dismissing a case on the ground that the complaint failed to anticipate an affirmative defense, when it was under no obligation to do so. Judge Nottingham's stated reason for excluding the evidence is therefore wrong. Accordingly, only if there existed some alternative ground for basing its *Daubert* ruling on the written disclosures can the district court's decision be affirmed.

### III. Although The District Court Has Discretion To Require The Parties To Proffer *Daubert* Reliability Evidence In Some Manner Other Than Witness Testimony, It Must Inform The Parties What Procedures It Wishes To Impose

The majority offers three rationales for concluding that the district court was within its discretion when it barred the defense from establishing admissibility through witness testimony. First, the majority rests on the trial court's discretion to determine alternative procedures and argues that the defendant had notice that he was required to establish Professor Fischel's reliability in advance of the testimony. Second, the majority argues that the defendant "abandoned" his right to proceed via testimony by failing to make a motion to do so. Third, the majority claims that the defendant conceded that his Rule 16 disclosure was his "submission" on the *Daubert* issue. In this section we will address the first of those arguments.

The majority is correct that district courts have broad latitude to determine what procedures to employ in reaching a *Daubert* determination. *United States v. Rodriguez–Felix*, 450 F.3d 1117, 1122 (10th Cir.2006); *Goebel*, 215 F.3d at 1087.[2] But the court must provide adequate notice of the procedures so that the parties know what is expected. *Procter & Gamble Co. v. Haugen*, 427 F.3d 727, 742 (10th Cir.2005). It is an abuse of discretion for a district court to exclude testimony on account of noncompliance with court—imposed procedures without first informing the parties of the new procedures and giving them a reasonable opportunity to conform. *Id.; see Padillas v. Stork–Gamco, Inc.*, 186 F.3d 412, 417–18 (3d Cir.1999) ("[P]laintiff could not have known in advance the direction the district court's opinion might take and thus needed an opportunity to be heard on the critical issues before having his case dismissed."); *In re Paoli R.R. Yard PCB Litigation*, 916 F.2d 829, 855 (3d Cir.1990) ("Having no foreknowledge of the direction that the district court's opinion might take, the plaintiffs should have been given an opportunity to be heard on the critical issues before being effectively dispatched from court."). Giving notice about changes in procedure is not "hand-holding," Maj. Op. 1244–45 n. 10; it is a fundamental element of trial fairness.

We have no quarrel with the majority's uncontroversial premise that "Mr. Nacchio had no entitlement to a particular method of gatekeeping by the district court," Maj. Op. 1245, or its conclusion that "[t]he district court's failure to proceed as Mr. Nacchio anticipated does not by itself constitute an abuse of discretion." *Id.* If Judge Nottingham had imposed a reasonable set of alternative procedures, the defense would have been required to follow them. He did not. One searches the record in vain for any hint that Judge Nottingham instructed the defendant that he should proceed in any fashion other than that dictated by the rules. Apart from telling defense counsel to bring his expert disclosure into compliance with Rule 16, Judge Nottingham never discussed how the defense should go about demonstrating the reliability of Professor Fischel's econometric methodology.

In its April 3 memorandum, the government requested that if the court did not exclude Professor Fischel's testimony outright, the court should schedule a *Daubert* hearing outside the presence of the jury "prior to the admission of such testimony." App. 421. The government also asked that Professor Fischel be compelled to provide "the reasons and bases for his opinions," presumably in writing, "in advance of such hearing." *Id.*[3] The court never ruled on these requests.

**2.** As in civil cases, the district court in a criminal case has discretion to require the filing of a written proffer. But in criminal cases "these procedures must be crafted in a way that respects the fact that the Defendant has no obligation to present a defense until the Government has established its case." *United States v. Impastato*, 535 F.Supp.2d 732, 743 (E.D.La.2008); *see United States v. Poulsen*, No. 06–129 (S.D.Ohio September 28, 2007) (reproduced in Addendum to Def.'s Supp. Br. at 29) (ordering defendants to submit expert reports *in camera* to prevent the government from getting "an unjustified pre-

view of Defendant's litigation strategy"). We need not determine in this case what limits on the trial court's discretion are entailed by these considerations, because Judge Nottingham did not order the defendant to provide any proffer beyond what he (mistakenly) thought was required under Rule 16.

**3.** This motion demonstrates that the government, at the time, understood that a motion was necessary lest the *Daubert* issue be decided through foundational testimony and voir dire examination in front of the jury.

To be sure, after disqualifying the witness and reprimanding defense counsel for attempting to address the issue in court, Judge Nottingham said that "[a]ny argument that you wish to make could have been put in the response," App. 3921, which might possibly be interpreted as a ruling that the defense should have established the reliability of the witness's methodology in writing in its response to the government's motion to exclude. More likely, by "argument" the judge meant legal argument as to why he should permit voir dire examination of the witness, but the precise meaning of the judge's words doesn't really matter. Judge Nottingham had given no notice in advance of the necessity of making a written proffer of the expert's methodology. The government had made a motion to compel a written proffer in advance of the testimony, but the court had not ruled on it. Indeed, the day before the government made its motion the judge had told defense counsel that in light of the rigorous schedule, "I'm not criticizing anybody for not submitting things in writing." App. 3603. Only two interpretations of these events are possible: either Judge Nottingham had not imposed any special procedures for establishing reliability, or he failed to inform the defendant that he had done so. Either way, it was an abuse of discretion to disallow the witness on this undisclosed ground.

The majority points to nothing in the record that indicates that Judge Nottingham imposed any additional procedures or notified the parties that he was doing so. That is because it did not happen. But the majority nonetheless denies that the defendant suffered "unfair surprise" when the court disallowed the expert evidence without hearing testimony from the witness. Maj. Op. 1246–47. The majority states that "Mr. Nacchio was on notice that the admissibility of Professor Fischel's testimony under FRE 702 was at issue well before the district court issued its ruling." Maj. Op. 1246. Of course he was; his counsel said as much. ("In Latin, forewarned is forearmed." App.2042.) The surprise did not pertain to *whether* there was a *Daubert* issue, it pertained to *when* and *how* the *Daubert* issue was to be addressed. Never, prior to disqualifying the witness, did the district judge say or even imply that the issue could not be resolved in the usual way, through voir dire examination of the witness on the stand.

The majority points to several instances in which the defense was warned that *Daubert* would be an issue. None of them would have led counsel to think that his right to address the question through foundational testimony and voir dire examination had been abrogated. During the March 22 hearing, the prosecutor stated that "it's my concern at least based on the way the disclosure is raised right now, there could be *Daubert* issues that arise with respect to certain parts of the testimony." App.2041–42. Judge Nottingham chimed in that the relevant case was probably *Kumho Tire* rather than *Daubert*. App.2042. The majority describes this as "at the very least, de facto warning of the imminent need for Mr. Nacchio to meet his burden." Maj. Op. 1246. We do not agree. Putting aside that this appears to be yet another example of the prosecutor's erroneous interpretation of Rule 16 (hence the reference to the "disclosure"), the prosecutor said only that there "could be" *Daubert* issues with respect to "certain parts of the testimony." In other words, the prosecution might, in the future, object to certain parts of Professor Fischel's testimony. The prosecutor's remarks can scarcely be interpreted as notice that the defense was required "imminently" to present evidence of the expert's methodology on pain of having the entirety of his testimony excluded. As to the judge's intervention, it was nothing more than a

clarification of the proper case citation. This was the district court's *only mention* of *Daubert* or *Kumho Tire* at any point prior to his ruling disqualifying the witness.

The majority points next to the government's motion to exclude Professor Fischel's testimony, which, as it observes, "invoked *Daubert* and FRE 702 numerous times." Maj. Op. 1246. But the government's claim that Mr. Nacchio had failed to carry his burden to demonstrate the reliability of Professor Fischel's methodology under *Daubert* and Rule 702 was parasitic on its claim that Rule 16 compels disclosure of an expert's methodology in writing in advance of the testimony. The argument was that *the disclosures* did not satisfy *Daubert* or Rule 702. *See* Gov't Motion to Exclude, App. 363 ("The disclosure also does not show that Professor Fischel used a reliable methodology in reaching his opinions."); to similar effect *see id.* at 385, 388, 390, 393, 396, 398, 400, 403, 405, 407–08, 415. The defense disagreed with that interpretation of Rule 16, and rightly so. The government's legal error about Rule 16 cannot serve as notice that the defendant bears a burden it would not otherwise bear, no matter how often the error was repeated.

The cases cited by the majority provide no more support for its conclusion than does the record. On the contrary, they show just how extraordinary an outlier this decision will be. The majority first compares this case to *Ralston v. Smith & Nephew Richards, Inc.,* 275 F.3d 965 (10th Cir.2001), in which the court ruled on summary judgment that the expert's own deposition showed that she was not qualified to opine on the matter at issue. The proponent of the evidence claimed "unfair surprise," asserting that she did not know that the qualifications of the expert would be an issue at the summary judgment hearing. *Id.* at 970 n. 4. The court reject-

ed the claim of surprise on the ground that the other party had devoted an entire section of one of its memoranda in support of summary judgment to the proposition that the expert was not qualified.

These cases are not remotely similar. In *Ralston,* a civil case, the issue arose on the defendant's motion for summary judgment. The plaintiff must have known that the motion would be decided, as motions for summary judgment always are, on the evidence in the record. This included her expert's deposition testimony admitting her lack of qualifications. Our case is a criminal case where there have been no depositions. The expert in our case has not admitted to any lack of qualifications. The proponent of the expert testimony in our case had no way of knowing that the reliability of his expert's methodology would be evaluated on the basis of written submissions, since his only written submission was his Rule 16 disclosure. The judge in our case based his disqualification ruling on the failure of the defense to provide discovery that it was not required to provide, rather than on the expert's own admissions, as in *Ralston.*

The majority also relies on an unpublished opinion, *Solorio v. United States,* 85 Fed.Appx. 705, 709–10 (10th Cir.2004), another civil case in which this court rejected a claim of unfair surprise in connection with the disqualification of an expert under *Daubert.* In *Solorio,* the *Daubert* issue was first raised in summary judgment papers and then orally argued during the summary judgment hearing, during which the district judge gave the proponent numerous opportunities to explain and defend the basis for the expert's opinions. The present case could scarcely present a greater contrast. In *Solorio,* the proponent failed to establish reliability through the expert report, as the civil rules require, but the district judge nonetheless

gave him repeated opportunities to do so orally in court. In our case, the defendant fully complied with his discovery obligations, but the district court would not allow him to speak.

*Procter & Gamble Co. v. Haugen* is more nearly on point. In that case, like this one, the district court rendered its *Daubert* disqualification ruling at a point in the litigation when the proponent of the expert testimony "had not submitted any expert reports to the district court [and] the district court had not heard any expert testimony." 427 F.3d 727, 741 (10th Cir. 2005). Unlike this case, the other side in *Procter & Gamble* had not filed a motion to limit or exclude the evidence. This court reversed the disqualification ruling, for two reasons. First, the court concluded that the proponent of the evidence "had absolutely no warning prior to the district court's order of dismissal that the district court would be considering, let alone ruling on, the admissibility of [the expert's] testimony." *Id.* at 742. Second, and "relatedly," the court noted that "the district court failed to 'creat[e] ... a sufficiently developed record in order to allow a determination of whether [it] properly applied the relevant law.'" *Id.* (quoting *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1223 (10th Cir.2003)) (ellipses in original) (internal quotation omitted). Because of the lack of notice, the parties had not provided the district court with "detailed briefing" on admissibility, and the district court rendered no "detailed" or "specific" findings to explain its ruling—leading this court to label the ruling "off-the-cuff," *id.* (quoting *Goebel*, 215 F.3d at 1088), and to reverse.

This case, while not identical, is similar. In both, the parties were aware that *Daubert* issues were in the offing and would have to be decided "at some point." *Id.* In both cases the record at the time the court made its ruling was inadequate to enable the court to make a proper *Daubert* judg-ment. In neither case did the parties know the issues would be decided prior to briefing, argument, and either submission of an expert report or testimony. Thus the proponents were caught by surprise. To be sure, our case is complicated by the government's erroneous Rule 16 motion; the defense certainly had notice that the court would decide the Rule 16 issue before the expert took the stand. But Mr. Nacchio had no notice that, apart from Rule 16, Judge Nottingham would take it upon himself to decide the merits of the *Daubert* issue "off-the-cuff," without hearing testimony or argument. In that sense, this case is similar to *Procter & Gamble* and should be decided the same way.

The majority purports to distinguish *Procter & Gamble*, but we think not persuasively. The majority states that "the expert admissibility issue here had been put before Mr. Nacchio multiple times," Maj. Op. 1249, as it had—but that provides no more notice that the district court would decide the admissibility question without hearing testimony than the parties received in *Procter & Gamble*. The majority also states that "the district court's ruling offered specific support for its determination and referenced relevant filings by both Mr. Nacchio and the government," *id.*, as it did—but because the determination was based on the assumption that the defendant had to defend the expert's methodology in his written disclosure, the district court's ruling in our case is no less an abuse of discretion than was that in *Procter & Gamble*. Both cases involved a premature decision on the *Daubert* issue without notice to the parties that they could not make their showing as the rules would lead them to expect.

The majority also points to repeated "opportunities" for the defense to file a written proffer of evidence sufficient to satisfy the *Daubert* standards or to file a

request for a hearing or continuance. Maj. Op. 1249–50, 1250–51. With 20–20 hindsight, no doubt defense counsel wishes he had taken one of these "opportunities." But viewed from the perspective of the trial as it was unfolding, defense counsel had no way to know that he needed to. Under the rules, absent a contrary directive from the district court, he was entitled to establish reliability by putting the witness on the stand. He had absolutely no reason to do anything else.

In short, the majority's first alternative ground for affirmance—that the defense failed to comply with procedures imposed by the district court in its discretion—fails either because the district court did not impose any such procedures or because, if it did, it failed to inform the parties. Either way, it would be an abuse of discretion to disallow testimony on this basis.[4]

We obviously disagree with the majority's view that Mr. Nacchio received adequate notice that the *Daubert* issue would be decided before he had a chance to put the witness on the stand. But that conclusion affects only this defendant. Far more troubling is the majority's holding, relegated to footnotes and utterly bereft of any citation of authority, that the defendant was not legally entitled to notice that the district court would decide the *Daubert* issue in this summary fashion. *See* Maj. Op. 1244–45 n. 10, 1245 n. 11. That unprecedented holding will apply in all future cases, until another en banc court convenes or the Supreme Court intercedes. It is simply not true that defendants have "no right to be schooled by the district court concerning the specific means it would use to decide the motion and the

timing of its planned action." Maj Op. 1245 n. 11. If the district court intends to adopt a procedure other than that set forth in the rules or familiar to the parties by custom, it must give notice. *See Procter & Gamble Co.*, 427 F.3d at 742; *Padillas v. Stork–Gamco, Inc.*, 186 F.3d at 417–18; *In re Paoli R.R. Yard PCB Litigation*, 916 F.2d at 855. To deny a criminal defendant, or any party, the right to put on relevant evidence without first informing him of the means the court would use to decide its admissibility is not merely an abuse of discretion; it is a violation of due process of law.

## IV. The Defendant's Reply To The Government's Motion To Exclude Did Not Constitute Abandonment Of The Right to Present Testimony In Support of Admissibility

As a second alternative ground for affirmance, the majority holds that the defendant forfeited or "abandoned" his right to present evidence in support of the reliability of Professor Fischel's methodology by his failure to request a hearing. Maj. Op. 1251–52. There are two versions of this argument. First, that "[i]f Mr. Nacchio desired an evidentiary hearing, he bore the burden of requesting one." Maj. Op. 1251. Second, that the defendant's failure to request a hearing in response to the government's April 3 "Motion to Exclude Testimony by Daniel Fischel" constituted abandonment of the right. Maj. Op. 1251–52. Both versions of the argument are unsupportable.

The majority denies that it is relying on a forfeiture argument, preferring to say that the defendant "abandoned" his right

---

4. To be fair to the district court, Judge Nottingham did not base his ruling on the defendant's failure to comply with procedures he imposed in his discretion. That is the majority's theory. Judge Nottingham excluded the witness on the basis of his erroneous interpre-

tation of Rule 16. It is easy to understand why the judge did not think he needed to inform defense counsel of new procedures; the judge believed he was simply enforcing the standard disclosure requirements set forth in Rule 16.

rather than that he "forfeited" it. Maj. Op. 1251–52 & n. 17. This is a distinction without a difference. A forfeiture occurs when a party neglects to make an argument or assert a right at the proper time, and thus loses the opportunity to do so. *See United States v. Zubia–Torres*, 550 F.3d 1202, 1205 (10th Cir.2008). The majority states that "Mr. Nacchio necessarily lost his opportunity to mount a response to the government's challenge to the admissibility of Professor Fischel's testimony on any grounds that he failed to present before the district court ruled." *Id.* at 1251–52 n. 17 (emphasis omitted). That is a forfeiture: to say that a party loses his "opportunity" to exercise a right or make an argument if he "failed to present [it]" at the proper time is to say he forfeited it. *Cf. Macsenti v. Becker*, 237 F.3d 1223, 1231 (10th Cir.2001) ("We are convinced that Defendant forfeited the opportunity to subject the expert testimony of Dr. Sullivan and plaintiff's other experts to a *Daubert* challenge by failure to make a timely objection before that testimony was admitted.").

The majority's assertion that "[i]f Mr. Nacchio desired an evidentiary hearing, he bore the burden of requesting one," Maj. Op. 1251, is accompanied by neither a citation of authority nor an argument. Moreover, it is logically inconsistent with the proposition, which the majority does not even attempt to dispute, *id.* at 1244–45 & n. 10, that the presumptive means of establishing reliability is through questioning the witness on the stand. *See* pages 1260–62, above. Motions are required when a party wishes the court to employ an alternative procedure, not when it wishes to proceed in the presumptive fashion. Moreover, to be precise, Mr. Nacchio did not desire a separate *"Daubert* hearing"; his assumption was that he would establish the reliability of the expert's methodology by putting Professor Fischel on the stand and eliciting testimony about his methodol-

ogy. A criminal defendant does not have to make a motion for permission to do this. He simply calls his witness to the stand and does whatever is necessary under the circumstances to establish admissibility. Defense counsel's failure to file a formal motion for a "hearing," therefore, cannot be construed as a forfeiture or abandonment of his right to put on the witness.

Nor did the defendant's failure to request a hearing in response to the government's "Motion to Exclude Testimony by Daniel Fischel" constitute a forfeiture. The government's 61–page motion argued primarily that the defendant's Rule 16 disclosure was inadequate, and that the expert should be excluded on that ground. App. 362–63; *see id.* at 418 (arguing that exclusion was an appropriate "sanction" for the defendant's failure to "obtain an adequate expert report"). With respect to each of the issues on which Professor Fischel planned to opine, the motion pointed out that the defendant's Rule 16 disclosure did not set forth any description of the methodology Professor Fischel employed, and argued that this was grounds for exclusion. *Id.* at 385, 388, 390, 393, 396, 398, 400, 403, 405, 407–08, 415. This aspect of the motion, therefore, was nothing more than a repackaging of the argument that the defense was required to disclose methodology in the Rule 16 disclosure. The motion also argued that the evidence was inadmissible on a number of other grounds under Rule 702, which are not defended by the majority and are therefore not relevant. These included: that Professor Fischel's testimony would be a statement of alleged facts, that his testimony would not be outside the jury's ordinary range of knowledge, that his qualifications were not relevant to the particular opinions, and that his testimony might confuse or mislead the jury. The government argued that because of these flaws, along with the Rule 16 deficiencies, the testimony could

be excluded as a matter of law without the necessity of a hearing. Then, on the penultimate page of the motion, the government stated: "If, however, the Court is inclined to allow any portion of the proposed expert opinion testimony discussed above based on the disclosures to date, the United States respectfully requests a hearing prior to the admission of such testimony in order to challenge its admissibility out of the presence of the jury." *Id.* at 421. The government "request[ed] that in advance of any such hearing, Professor Fischel should provide the reasons and bases for his opinions." *Id.*

The next day, the defense filed a 7–page "Reply to United States Motion to Exclude Testimony by Daniel Fischel." The first section of the reply defended the defendant's expert disclosure under Rule 16, accurately setting forth the requirements of the rule and showing that the disclosure was in full compliance. The second section of the reply addressed the admissibility arguments the government made under Rule 702, such as whether Professor Fischel's opinion was the product of specialized knowledge, whether it was relevant, and whether it would assist the jury in understanding the evidence. The third section defended Professor Fischel's qualifications. The reply did not make explicit reference to the government's request for a *Daubert* hearing in the event these arguments for outright exclusion did not carry the day. The reply concluded with the request "that United State's [sic] Motion to Exclude Testimony by Daniel Fischel be denied." App. 468. We believe that this reply was adequate under the circumstances and that the majority is wrong to hold that it "abandoned" the defendant's right to present testimony in support of the reliability of Professor Fischel's methodology.

With regard to the government's argument that the disclosures did not establish the reliability of Professor Fischel's methodology, the reply was fully responsive, even though it did not persuade the district court. The reply showed, correctly, that the defendant's Rule 16 disclosure was sufficient. It did not, of course, even purport to establish the reliability of Professor Fischel's methodology; its point was that there was no legal requirement that the Rule 16 disclosure do so. Because Rule 16 did not require the disclosure to establish reliability, the government's arguments based on the lack of any "indication" in the disclosure that the expert employed a reliable methodology were without merit. As noted above, no one now defends the government's contention on this point.

The reply also addressed the government's most serious arguments regarding other admissibility issues under Rule 702. This also did not persuade the district court. As part of his explanation for disqualifying the witness, though not the "primary" reason, Judge Nottingham held that Professor Fischel's testimony was not relevant and would not be helpful to the jury. App. 3919. On appeal, the panel considered this rationale on the merits and rejected it. *Nacchio,* 519 F.3d at 1155. The government did not seek review of that holding in its petition for rehearing, it was not within the questions posed by the court for en banc rehearing, and the majority does not rely upon it.

That leaves the government's request for a separate *Daubert* hearing out of the presence of the jury. The defendant's reply made no reference to that request, and it is not improbable that this is because the defense agreed with, or at least was indifferent to, the suggestion. It follows that the defendant forfeited any right to object to a *Daubert* hearing. But the defendant certainly did not forfeit or abandon any right to object to having the *Daubert* decision rendered without either a separate

hearing or an examination of the witness at the beginning of his testimony. The government had not moved for any such thing, except on the legal grounds discussed above, to which the defense adequately and correctly responded. Silence regarding a *request* for a hearing cannot be construed as silence regarding *denial* of a hearing.

Indeed, the government stated in its motion that if the court did not disqualify the witness under Rule 16, "the Court would likely need to hold an evidentiary hearing." App. 420. In the face of that admission, the defendant had no reason to doubt that, if the Rule 16 and other evidentiary issues were properly decided, a hearing would take place on the *Daubert* issues.[5] Contrary to the majority, the defendant had no need to "second" the government's motion for a *Daubert* hearing. Maj. Op. 1247–48 n. 14. If a party does not oppose the other side's motion, he need not respond.

The majority suggests, however, that a combination of one sentence in the introduction to the reply and the prayer for relief at the end of the reply "plausibly could be read as both opposing the government's hearing and inviting the court to rule on admissibility without further proceedings." Maj. Op. 1253. We do not see how. The introductory sentence quoted by the majority reads in its entirety: "The government's arguments are without merit." App. 463. The prayer for relief

reads: "For the reasons set forth above, Mr. Nacchio respectfully requests that the United State's [sic] Motion to Exclude Testimony by Daniel Fischel be denied." App. 468. Nothing in between makes any reference to the possibility that the court might make its *Daubert* ruling "without further proceedings." As already noted, the government had not made any such suggestion. Judge Nottingham did not base his ruling on any such interpretation of the defendant's reply, and if he had done so, it would surely have been an abuse of discretion. It cannot serve as an alternative ground for affirmance.

## V. The Defendant Did Not Concede That His March 29 Disclosure Should Be Treated As His *Daubert* Submission

As a final attempt to justify the district court's refusal to allow the defense to establish the witness's reliability through hearing or testimony, the majority leaps on a sentence in the defendant's filing concerning rebuttal testimony, and attempts to argue that this was an admission that the defendant "considered his revised Rule 16 disclosure to be a submission on Professor Fischel's methodology," Maj. Op. 1249 n. 15; *id.* at 48–49, *citing* Aplee Supp. En Banc App. 50. The theory seems to be that if the defense "considered" its Rule 16 disclosure statement as a submission on the *Daubert* issue, the district court was entitled to treat it as such, and to make the *Daubert* determination on

---

**5.** For the first time in this litigation, the government contends in its supplemental brief that the defense was required to request a hearing pursuant to Judge Nottingham's local rule that "[a]ny party opposing [a] motion must ... state whether that party believes an evidentiary hearing is necessary." Nottingham, Practice Standards—Criminal ¶ 17 (2004). But the defense did not take the position that a hearing was required in opposition to the government's motion. The government's Motion to Exclude argued on Rule

16 and various evidentiary grounds that the testimony was inadmissible as a matter of law, to which the defense responded, also on legal grounds. Neither side thought these issues required a hearing for their resolution. The government did move for a hearing in the event the court disagreed with these arguments, but the defense did not "oppose" that motion. Judge Nottingham did not refer to the local rule in connection with his disqualification decision, and it apparently did not play a part.

the basis of the disclosure without further proceedings. *See* Maj. Op. 1240 n. 6. (arguing that the defendant thereby "tacitly acknowledged the legitimacy" of the district court's decision to decide the *Daubert* question on the basis of the written disclosures).

This interpretation has no support in the record. First, whatever the defendant may have said in his response on the rebuttal issue, that response was filed *three days after* the district's court's ruling excluding the Fischel testimony without a hearing. It therefore could not have been the district court's reason for proceeding as it did. At the time of that ruling, the defendant had said nothing that could be construed as an invitation to regard the Rule 16 disclosure as a *Daubert* submission.

More importantly, the majority's interpretation of the defendant's statement is completely unjustified. Since the majority does not quote the defendant's words, we will do so: "The government has had Professor Fischel's opinion and methodology on this opinion since March 29, 2007 (see Defendant's Expert Disclosure ¶ 7). Thus, it is hard pressed to claim surprise." Aplee Supp. En Banc App. 50. This says, plainly, that the disclosure precluded any "surprise" to the government that the testimony would be presented; it does not identify the disclosure as a "submission" regarding the reliability of the testimony under *Daubert.* Rule 16(b) required the defendant to provide a "written summary" of the "basis and reasons" for his expert's opinions. Mr. Nacchio's counsel did so on March 29, which is why the government could not claim "surprise." But as we have explained, and the majority does not contest, Rule 16(b) does not require the disclosure to contain a "complete statement" of the expert's methodology so as to demonstrate admissibility, and Mr. Nacchio's disclosure did not purport to do so.

The majority is therefore wrong to treat this reference to the March 29 disclosure as an admission that it contained an explanation of methodology sufficient to permit the district court to decide the *Daubert* issue.

The majority uses this mistaken claim of a concession to avoid the real issue in this case, which is not whether the disclosures adequately established reliability, but whether it was an abuse of discretion to decide the *Daubert* issue on the basis of the disclosures alone, without hearing or testimony. The majority conducts its entire analysis of whether the district court abused its discretion as if the issue in this case were whether the defendant's disclosures as of April 5 were sufficient to satisfy the *Daubert* test. See Maj. Op. 1256–59. But the defendant does not contend, and never has contended, that his written disclosures established reliability. The majority's discussion of that "issue" is an exercise in misdirection. The question is whether the district court was correct to cut the defendant off, and exclude the witness, without allowing defense counsel time to establish reliability through voir dire examination. Because Rule 16 did not require the defendant to establish reliability through written submissions, because the district court did not instruct the defendant to do so as an exercise of its discretion to depart from usual procedures, and because the defendant did not forfeit or abandon his right to establish reliability through hearing or testimony, the decision below must be reversed.

## VI. Even If The Defendant's Reply To The Government's Motion Were Somehow Deficient, It Was An Abuse of Discretion To Impose The Extreme Sanction of Disallowing A Criminal Defendant's Key Witness

Even assuming, for sake of argument, that the defendant was under an obligation

to "request a hearing" to establish admissibility of the expert witness through examination on the stand, we believe it would have been an abuse of discretion for a district court to impose the extreme sanction of disqualifying a criminal defendant's principal witness on account of this omission. *See United States v. Harvey*, 117 F.3d 1044, 1048 (7th Cir.1997) (reversing conviction because, in the absence of any "clearly-established rule or duty" violated by the defendant, the "drastic sanction" of precluding a witness was "unwarranted").

Criminal defendants have a constitutional right to present admissible evidence, and exclusion of a defendant's evidence on account of trial errors is a drastic sanction, reserved for only the most serious cases. It is an abuse of discretion for the trial court to exclude important defense evidence on account of discovery violations, such as inadequate disclosure under Rule 16, unless those violations seriously affect the trial. *Short v. Sirmons*, 472 F.3d 1177, 1188 (10th Cir.2006) ("Where the discovery violation is not willful, blatant or calculated gamesmanship, alternative sanctions are adequate and appropriate." (citation omitted)); *cf. Young v. Workman*, 383 F.3d 1233, 1239 (10th Cir.2004) ("Where a party has failed to comply with a discovery request, and the failure is 'willful and motivated by a desire to obtain a tactical advantage' at trial, then exclusion of the evidence 'is entirely consistent with the purposes of the Compulsory Process Clause' of the Sixth Amendment." (quoting *Taylor v. Illinois*, 484 U.S. 400, 415, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988))). The same is true of less serious trial errors, such as defense counsel's "unwise[ ]" failure to "second" the government's motion for a *Daubert* hearing. Maj. Op. 1247–48 n. 14. As Justice Breyer has commented, it is "essential" in this context that "the courts administer the Federal Rules of Evidence in order to achieve the 'end[s]' that the Rules themselves set forth, not

only so that proceedings may be 'justly determined,' but also so 'that the truth may be ascertained.'" *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 149, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) (Breyer, J., concurring) (citations omitted). Nothing about the circumstances here suggests that exclusion of Mr. Nacchio's key witness was an appropriate or proportionate response to defense counsel's omission.

First, it was surely understandable, even if it was not correct, for defense counsel to assume that he would have the opportunity to establish the admissibility of the expert evidence through witness testimony. The majority explicitly notes that this assumption "may have been reasonable." Maj. Op. 1245. The government shared this reasonable assumption. App. 420 (stating that if the court did not disqualify the witness under Rule 16, "the Court would likely need to hold an evidentiary hearing"). No case (at least not one that has been cited, or that we have discovered) has ever held that a criminal defendant's expert may be excluded merely because defense counsel did not move for permission to establish admissibility on the stand.

Second, far from being calculated to obtain tactical advantage, defense counsel's slip-up was wholly without consequence. The mistake on which the majority relies was counsel's failure to move for a hearing in response to the government's motion to exclude, or to "second" the government's motion for a hearing. Yet the record demonstrates that this omission was of no benefit to the defense, did not delay the trial, and did not change the course of the trial in any way. The night before Professor Fischel was scheduled to take the stand, the district judge had not yet looked at the government's motion to exclude. App. 3834. The next morning, in court, Judge Nottingham asked the prosecutor who was going to cross-examine Professor Fischel,

App. 3870, which indicates that at this point the judge assumed that Professor Fischel would testify, notwithstanding defense counsel's failure to file a motion to that effect. The government expressly acknowledged that, unless the court agreed with its Rule 16 or other admissibility arguments, Professor Fischel would be called to the stand. App. 420. That is why the government needed to file a motion asking the court to schedule a separate *Daubert* hearing, away from the jury, in advance of the testimony. No one acted on the assumption that, because defense counsel had not requested a hearing in writing, the witness would be disqualified. Whether the defense asked to proceed by testimony in its reply to the government's motion or would do so orally when Professor Fischel took the stand was of no practical significance.

Third, as the Supreme Court explained in *Koon v. United States,* 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), "[t]he abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." Judge Nottingham's exercise of discretion with respect to defense counsel's failure to file a written motion for a hearing is inseparable from his legal errors regarding Rule 16 and the relevance of economic expertise. In determining whether to disqualify the witness for counsel's misstep, it would surely be significant to the judge that, in his eyes, the defendant had made "egregious" and "gross" failures to comply with his disclosure obligations, rather than merely having omitted to make a written motion—the sort of failing Judge Nottingham had seemed to say he would not criticize. App. 3603.

Even more so, the judge must have been influenced by his conclusion that, quite apart from methodology, the evidence excluded was irrelevant and would be confus-

ing to the jury. In his explanation of his disqualification ruling, Judge Nottingham articulated a contempt for expert economic evidence that raises serious questions about any exercise of his discretion in this matter. He described Professor Fischel's proposed testimony—without knowing anything more about it than was described in the cursory "written summary" required under Rule 16—as "a waste of time" that would "mislead the jury" by "inviting the jurors to abandon their own common sense and common experience and succumb to this expert's credentials." *Id.* at 3919, 3920. He said, among other things, that the jurors had no need of expert evidence in determining whether Mr. Nacchio had an "economic incentive to trade or not trade on inside information here," App. 3917; that analysis of the defendant's trading patterns was "essentially irrelevant," *id.;* that economic analysis "is within the common knowledge of the jury," *id.* at 3918; that an analysis of whether Mr. Nacchio's sales could be explained on the basis of the "economics of diversification" is "a piece of elucidation we really don't need here," *id.;* and that a comparison of Mr. Nacchio's trades to those of other CEOs or Qwest directors at the same time, who lacked Mr. Nacchio's inside information, is "almost preposterous." *Id.* at 3919. He opined that expert evidence is no more necessary in a complex securities matter than in "a simple negligence case." *Id.* at 3841. These statements are in sharp conflict with the advisory committee note to Federal Rule of Evidence 702, which describes "the venerable practice of using expert testimony to educate the factfinder on general principles," specifically mentioning as an example "how financial markets respond to corporate reports."

On appeal the panel held that the district's court's exclusion of the evidence on the ground that economic analysis is irrelevant and misleading in a securities case of

this sort was an abuse of discretion. *Nacchio*, 519 F.3d at 1156. The government did not petition for rehearing to review the panel's conclusion on this point, and the majority does not breathe a word in support of the district court's dismissive view of economic analysis. That the district court erred in this respect is therefore undisputed. Because the district court's exercise of discretion was "guided by [these] erroneous legal conclusions," the defendant is entitled to reversal. *Koon*, 518 U.S. at 100, 116 S.Ct. 2035.

The majority disregards the district court's erroneous view of the relevance of economic evidence on the ground that "review of this ... issue was not sought on en banc rehearing." Maj. Op. 1243 n. 9. That is upside-down. The panel explicitly *reversed* the district court's relevancy ruling, and the government's decision not to seek rehearing on that issue means that holding is now undisputed. It does not make the holding disappear. Even though the panel's opinion was vacated, as the majority points out, *id.*, the district court's errors were still errors; no one defends them. Unless the errors were harmless, *see United States v. Labastida–Segura*, 396 F.3d 1140, 1143 (10th Cir.2005), they necessitate reversal of the district court's decision.

The majority also seems to suggest that the district court's relevancy ruling is outside the scope of this en banc proceeding. Maj. Op. 1243–44 n. 9. Not so. One of the issues posed in the en banc order was whether the district court "abuse[d] its discretion in disallowing the evidence." *United States v. Nacchio*, 535 F.3d 1165 (10th Cir.2008) (order granting petition for rehearing en banc) (quoted at Maj. Op. 1236 n. 1). This court has held time and time again that a district court abuses its discretion if it applies the wrong legal standard. *E.g., Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1224 (10th Cir.2009); *RoDa Drilling Co. v. Siegal*, 552 F.3d

1203, 1208 (10th Cir.2009); *United States v. Ramirez*, 304 F.3d 1033, 1035 (10th Cir. 2002); *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1153 (10th Cir.2001). In its explanations for the evidentiary ruling, the district court made at least two glaring legal errors, which no one—neither the government nor the majority—now defends. First, confusing the civil and criminal discovery rules, the court held that the defendant's Rule 16 disclosures were egregiously deficient because they failed to set forth the expert's econometric methodology. App. 3914, 3917. Second, the court held that expert economic testimony in this case would be irrelevant and a waste of time. *Id.* at 3917–20. The abuse of discretion issue brings these errors squarely before this en banc court. That the court's decision to exclude the evidence was based in significant part on these errors of law renders the ruling an abuse of discretion.

The majority does not defend the district court's holdings on these points; it all but ignores them, and conducts its analysis of abuse of discretion without taking them into consideration. *See* Maj. Op. 1256–59. The majority offers no explanation why it regards the legal errors that informed the district court's decision as "not germane." *Id.* at 1244 n. 9. It simply declares them so.

It is black letter law that a district court's legal errors are relevant to whether it abused its discretion. *Koon*, 518 U.S. at 100, 116 S.Ct. 2035; *Westar Energy*, 552 F.3d at 1224; *RoDa Drilling*, 552 F.3d at 1208; *Ramirez*, 304 F.3d at 1035; *Dominion Video Satellite*, 269 F.3d at 1153. Judge Nottingham certainly regarded the supposed disclosure deficiencies and irrelevance of economic analysis as material to his evidentiary ruling. He said so, repeatedly. The judge explained that he was disqualifying Professor Fischel "pri-

marily" on account of defense counsel's "gross defect in failing to reveal the methodology" in the disclosures. App. 3921. The other principal reason he gave for the decision was the "irrelevan[ce]" of economic testimony. *Id.* at 3919. When he refused to allow Professor Fischel even to testify in rebuttal, the judge repeated these two rationales: that "[t]he March 29, 2007, disclosure contained no methodology or reliable application of methodology to the case," *id.* at 4075, and "even if it were reliable, the Court remains of the conclusion that the testimony is of no relevancy." *Id.* at 4075–76. We are baffled that an appellate court could declare certain reasons not "germane" when those were the reasons given by the district court for its decision.

Even apart from Judge Nottingham's own words, the relevance of his legal errors to the evidentiary ruling is obvious. As we have already noted, in determining whether counsel's procedural derelictions should result in disqualification of the criminal defendant's key witness, it must necessarily have been significant to the judge that they constituted (he thought) "egregious" and "gross" violations of the defendant's disclosure obligations. Similarly, Judge Nottingham's notion that economic testimony is misleading and a waste of time must have influenced his ruling. A court must balance any procedural omission regarding the introduction of evidence against the importance of that evidence to the truth-seeking function of the trial. If the court regards the testimony as a "waste of time," this must necessarily affect its assessment of the balance. Indeed, if the court did not take into consideration the seriousness of the procedural infraction and the importance of the evidence to the defense, it would likely be an abuse of discretion. Those are among the most important factors the court is supposed to consider. *See United States v. Bahamonde,* 445 F.3d 1225, 1231 (9th Cir.

2006) (listing factors a district court must consider before excluding a defense witness's testimony); *Short v. Sirmons,* 472 F.3d 1177, 1188 (10th Cir.2006) (noting the importance of whether the procedural infraction was "willful," "blatant," or in "bad faith"); *Fendler v. Goldsmith,* 728 F.2d 1181, 1188 (9th Cir.1983) (describing the importance of the witness as the "most significant" consideration). If the considerations that guided the court were based on incorrect understandings of the law, as these were, the court's exercise of discretion was necessarily distorted.

Discretion involves a sense of proportion. Not every violation of procedural rules warrants the nuclear option of disallowing the defense to present its case. As the Seventh Circuit observed in *Harvey,* "[t]he stakes in criminal prosecution are always high, and defendants' Sixth Amendment rights must be protected to ensure that the truth is ultimately found." 117 F.3d at 1048. We cannot regard the sanction here as proportionate to the procedural omission, which was both understandable and inconsequential. It strongly appears that the district court's exercise of discretion was affected by its unsupportable views regarding Rule 16 and the value of economic expertise. We have nagging doubts about the district judge's sense of fairness toward this defendant. If the decision here was not an abuse of discretion, we wonder what one would look like.

## VII. Conclusion

The defendant complied with the rules of criminal procedure. The district court's ruling to the contrary was based on a confusion between civil and criminal discovery rules. Although the district court had discretion to impose its own procedures for litigation of the *Daubert* issue, it did not do so, or if it did, it failed to inform

the parties so that they could conform to the new procedures. The defendant's response to the government's motion to exclude cannot be interpreted as a forfeiture or abandonment of his right to establish the admissibility of the evidence through the expert's testimony, either at the start of the witness's testimony or in a separate *Daubert* hearing outside the presence of the jury, as had been requested by the government. But even if defense counsel was derelict in failing to file a written motion for a *Daubert* hearing, it was an abuse of discretion for the district court to exclude the defendant's key testimony for that reason. We therefore respectfully dissent.

KELLY, Circuit Judge, dissenting.

It is indeed unfortunate that the court chooses expediency over due process. It is equally unfortunate that the court attempts to spin the facts to elevate a Rule 16 challenge to one based upon *Daubert* and Fed.R.Evid. 702. That Mr. Nacchio's counsel should have had the prescience to anticipate the trial court's mercurial procedure is unsupported by the record, and unsupportable. Although the court suggests that there were numerous opportunities to have (a) provided more argument and evidence on methodology, (b) requested a hearing, or (c) requested a continuance, all of these suggestions presuppose that a rational lawyer would anticipate that a criminal trial court would (1) misunderstand the scope of what is required under Rule 16, (2) employ a variant procedure for the admissibility of crucial expert testimony, and (3) not notify the parties of this procedure.

Moreover, given the tone of this trial, it is quite likely Mr. Nacchio's counsel would have been prohibited from doing exactly what the court suggests he should have done. Culminating with the remark that "it's [not] an interactive process where you get to argue later on," App. 3921, Mr.

Nacchio was prevented from calling his main witness and then deprived of the right to put on an effective defense. To the extent that the court suggests that the trial court gave Mr. Nacchio every opportunity by waiting to rule until Dr. Fischel was actually called, nothing could be further from reality. As noted by this court, the district court knew that the parties were awaiting a ruling on the Rule 16 motion and deliberately declined to rule until the very morning Dr. Fischel was to testify. This becomes even more egregious when placed in the context of how the trial court proceeded after the second Rule 16 disclosure. In the middle of a complex criminal trial, the government filed a 63–page motion clearly aimed at the Rule 16 disclosure; the defense was given overnight to respond, and a ruling not based on the taking of any evidence or listening to any argument was rendered the next morning. Counsel then was denied an opportunity to confront the underlying basis of the ruling. Our founders must have had similar scenarios in mind when they wrote "nor shall any person ... be deprived of life, liberty, or property, without due process of law...." U.S. Const. amend. V. We reverse judgments when a district court exercises its discretion on a material matter based upon an incorrect view of the law and when a defendant has not been given an adequate opportunity to be heard—that is what happened here. I would reverse and remand for a new trial. I join Judge McConnell's dissent.

HENRY, J., dissenting, joined by KELLY, Circuit Judge:

I join the dissent of Judge McConnell that fully covers these matters. However, I feel strongly enough to add a few thoughts of my own.

This was not an easy case. Following a sixteen-day trial, involving a massive 42–count indictment, a jury deliberated for six days prior to reaching a decision. Yet, the district court, seemingly driven by some internal time schedule, deprived Mr. Nacchio of his key expert witness, Professor Daniel Fischel. Professor Fischel would have testified in this complex case on an issue that is a specific example of the very testimony contemplated by Rule 702. *See* McConnell Dissent at 1274–75.

While the majority declares that the district court "made clear [its] need for some proffer of data or literature underlying [Professor Fischel's] assumptions and conclusions," Maj. Op. at 1251, the majority acknowledges that the district court made "ambiguous" and "enigmatic" references. *See id.* at 1242–43. The subsequent multipage explanation of the district court's ambiguous directions belies that the district court was clear; indeed, the fact that Mr. Nacchio's experienced team of lawyers, as well as a few judges of this court, missed the district court's "enigmatic" direction suggests a certain opacity.

The majority would have us believe Mr. Nacchio's lead counsel simply and inexplicably failed to perform the basic task of qualifying the witness, for no good reason. According to the majority, the defense knew what was necessary and had a number of opportunities to qualify the witness, but instead did nothing. This is highly unlikely. Far more likely, in my opinion, is that the defense was blind-sided: defense counsel expected to be able to qualify the witness in the usual way and was never told otherwise—only to find out, too late, that the district judge had made up his mind on the basis of the skeletal disclosure statement, and had decided to exclude the witness without hearing argument or testimony. If the majority is correct that the defense had notice that it had to present the expert's methodology in writing, or

had to file a motion, then why did counsel not do so?

It would not have been difficult to establish the admissibility of Professor Fischel's expert testimony. Indeed, Professor Fischel has provided expert testimony on financial and securities issues at least 200 times, including for the government. *See* Aplt's Br. of October 9, 2007, at 40. I know of no court that has ever excluded his testimony.

Of course, eminent scholarship alone does not guarantee admissibility. Mr. Nacchio was also required to comply with the rules of evidence, and, in particular, Rule 16. His Rule 16 disclosure provides the requisite summary of Professor Fischel's opinions, and the bases and reasons for those opinions: Professor Fischel was expected to testify that, among other things, based upon his analysis of the economic evidence, Mr. Nacchio's stock sales during the disputed period were not based on material non-public information. Def's filing of March 29, 2007, at 3. To reach this conclusion, Professor Fischel engaged in

(i) a comparison of the magnitude and timing of the Questioned Sales with the magnitude and timing of Mr. Nacchio's sales in prior periods; (ii) a comparison of the magnitude and timing of the Questioned Sales with public statements by Mr. Nacchio and requests made by the Qwest Board as to how and when sales should occur; (iii) the relationship between the magnitude of the Questioned Sales and Mr. Nacchio's saleable holdings; (iv) a comparison of the Questioned Sales with other contemporaneous stock transactions by Qwest; (v) an analysis of whether the Growth Share Payment created any incentive to trade on the basis of inside information; (vi) stock sales by other Qwest insiders in the period in which the Questioned Sales occurred; and (vii) stock sales by senior

executives of other companies in the period. . . .

*Id.* In essence, Professor Fischel was to opine on Mr. Nacchio's trading conduct during the disputed period, basing his opinion on the following: a comparison of the disputed sales with Mr. Nacchio's selling history, as well as other similarly situated senior executives; an evaluation of the incentives to trade throughout the disputed period; and the reaction of the market to disclosure of the information on which Mr. Nacchio allegedly traded. Had the district court admitted this evidence, we would not have questioned it for a nanosecond.

If the district court had any doubts about the reliability or relevance of this testimony, all it had to do was allow the defense and the prosecution to question Professor Fischel and thus compile a record. This would not have taken much time and could have been done out of the presence of the jury, as the government asked.

In Anglo–American jurisprudence, the goal is to admit all relevant, reliable, and useful evidence. The judicial process reflects this goal—our rules of evidence have a "liberal thrust." *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988). The rules on expert testimony are "notably liberal." *Krist v. Eli Lilly & Co.*, 897 F.2d 293, 298 (7th Cir.1990) (citing Fed.R.Evid. 702). When Fed.R.Evid. 702 was amended to account for the Supreme Court's decision in *Daubert,* the Advisory Committee emphasized that "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." Fed.R.Evid. 702 advisory committee's note (citing *United States v. 14.38 Acres of Land Situated in Leflore County, Missis-*

*sippi,* 80 F.3d 1074, 1078 (5th Cir.1996)). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (citing *Daubert v. Merrell Dow Pharms.,* 509 U.S. 579, 595, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)). Thus, under Fed.R.Evid. 702's codification of *Daubert,* the general rule of liberal admission of proper evidence is retained. The role of the district court is that of a gatekeeper, a tender or monitor who liberally allows the entrance of proper evidence; it is not a portcullis, excluding qualified patrons for indeterminate reasons.

Although, as Judge McConnell points out, we review a district judge's ultimate decision to admit or exclude expert testimony for an abuse of discretion, we review *de novo* whether the district court performed its gatekeeper function and applied the proper legal standards in doing so.[1] *Dodge v. Cotter Corp.,* 328 F.3d 1212, 1223 (10th Cir.2003). In evaluating the conduct of the district court, it is important to keep in mind context—the purpose of trial is to ascertain the truth. *See Maryland v. Craig,* 497 U.S. 836, 857, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990) (discussing the "truth-finding function of the trial itself" (citing *Coy v. Iowa,* 487 U.S. 1012, 1032, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988) (Blackmun, J., dissenting))). The United States Constitution, and in particular the Sixth Amendment, protect and support the "truth seeking goal" of criminal trials. *Id.* Thus, the trial judges, as evidentiary "gatekeepers," must screen and balance the evidence. *See, e.g., Kumho Tire Co. v. Car-*

---

1. Because Mr. Nacchio did not argue for *de novo* review under the theory that the district court failed to perform its gatekeeper function and failed to apply the proper legal standard in doing so, and because I believe Mr. Nacchio succeeds under an abuse-of-discretion theory, I will refrain from further discussion of the *de novo* standard.

*michael,* 526 U.S. 137, 145, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

We, as an appellate court, are charged with reversing district court judgments that are "arbitrary, capricious, whimsical or manifestly unreasonable." *Dodge,* 328 F.3d at 1223 (internal quotation marks omitted). And, reviewing the district court's ultimate determination of whether to admit or exclude testimony under the proper legal standard for abuse of discretion, I would reverse. It was plainly wrong for the district court to make its *Daubert* determination on the basis of a Rule 16 disclosure alone. And it was plainly wrong for the district court to deny the defendant the right to establish admissibility without prior, clear notice of how he was supposed to proceed.

The district court's draconian decision to exclude Professor Fischel as an expert flies in the face of the truth-finding goals of trial, the constitutional safeguards to a full defense, the liberal thrust of the rules of evidence, and amounts to exactly the type of manifest unreasonableness we, as a reviewing court, should reverse.

And, though I fear for today's result, I do not believe this case is over. If "the district judge made clear his need for some proffer of data or literature underlying the expert's assumptions and conclusions, [and] the defense offered practically nothing, despite repeated opportunities to do so," Maj. Op. at 1251, (citing *United States v. Brien,* 59 F.3d 274, 277 (1st Cir. 1995)), then defense counsel behaved inexplicably, which is to say they performed below the level expected of competent counsel. That means we will most likely see these issues return in the form of a § 2255 claim for ineffective assistance of counsel. The fact that a possibly meritorious § 2255 claim is waiting has no direct effect on what we do here now. Nonetheless, the majority's scenario, which depends on a holding that counsel's

ineffectiveness possibly rose to a level of constitutional infirmity, suggests to me an alternative explanation: the district court simply was *not* clear, and it abused its discretion in excluding Mr. Nacchio's expert.